**In re Grand Jury Investigation WILLIAM H. PFLAUMER & SONS, INC.**

**Misc. No. 71–157.**

United States District Court,
E. D. Pennsylvania.

Oct. 14, 1971.

Abe Lapowsky, Philadelphia, Pa., for petitioner.

Robert C. Ozer, U. S. Dept. of Justice Strike Force, Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., for respondent.

## OPINION

EDWARD R. BECKER, District Judge.

### I.

This case involves a motion for a protective order in connection with a federal grand jury subpoena. It raises important and difficult questions of: (1) the extent to which the United States Attorney may disclose material subpoenaed before the grand jury to personnel of other government agencies assisting in the investigation without violating the secrecy of the grand jury, and (2) the extent to which Fed.R.Crim.P. 6(e), upon which the government relies for authority to disclose, comes to grips with the realities of the grand jury investigative process.

The records of petitioner William H. Pflaumer & Sons, Inc. ("Pflaumer"), a beer distributing concern, were subpoenaed by the United States Attorney on June 18, 1971 for production before a grand jury investigating racketeering.[1] According to a statement filed shortly thereafter at the request of the Court, the records were subpoenaed because they bear upon an alleged racketeering scheme involving an attempt by Pflaumer to "exercise a pervasive control over the bars and small beer distributors in the City of Philadelphia." A supplemental statement was filed by the United States Attorney with the Court on July 1, 1971 asserting that the grand jury had also commenced a criminal tax investigation of Pflaumer in addition to the racketeering investigation.[2]

Assisting the United States Attorney in the investigation are agents of the Internal Revenue Service ("IRS"). The government acknowledges that the IRS agents will have full access to the records and will play a large role in analyzing them and developing material for presentation to the grand jury. The government also acknowledges that: (1) the particular IRS agents involved had

[1.] The subpoena recites that Pflaumer was to produce sales journals, sales invoices, accounts payable ledgers, general journals, general ledgers, copies of all agreements applicable to purchase of other beer distributors, payroll records, copies of settlement sheets of all real estate transactions, copies of all invoices relative to repairs and improvements, notes payable (instruments and records), loans payable (contracts and records), articles of incorporation, stock transfer book, minute book, cash receipts book, cash disbursement book, bank ledger statements, check stub registers, cancelled checks, duplicate deposit tickets, petty cash book, petty cash vouchers, purchase journal, purchase invoices, memoranda, correspondence and all other supporting documents relating to income expenses and balance sheet items shown on corporate tax returns; all for the years 1966, 1967, 1968, 1970 and 1971.

[2.] The supplemental statement recited that the criminal investigation would develop information relating to possible criminal violations of the tax laws of the United States, specifically 26 U.S.C. §§ 7601, 7606.

been investigating the tax affairs of Pflaumer for some time previous to the investigation; (2) the knowledge of Pflaumer's affairs which they glean through their role in the grand jury investigation cannot be eradicated; and (3) the IRS agents will not be foreclosed from utilizing it when they return to their original duties or in any further investigation of Pflaumer which may eventuate. In fact, while asserting that the subpoena is in furtherance of the criminal tax investigation, as well as the racketeering investigation, the United States Attorney readily admits the possibility that information thus gathered may be used in connection with a civil tax action.[3]

Pflaumer first moved to quash the subpoena for reasons which are peripheral here. We denied the motion to quash.[4] Pflaumer then filed the motion which is now before us which seeks a protective order prohibiting use of the subpoenaed material by agents of the IRS in connection with either a criminal or civil tax investigation of Pflaumer. Moreover, Pflaumer expresses as much concern about the civil as about the criminal aspects of the matter.

The first ground of the motion is that disclosure to agents of the IRS in the manner described would violate the secrecy of the grand jury. This ground is pressed notwithstanding the filing of the supplemental statement certifying

the initiation of the tax investigation by the grand jury. The second ground of the motion is that the very same records had been previously sought by an IRS summons in proceedings pursuant to 26 U.S.C. § 7601 et seq., and that the government was using the grand jury subpoena as a mere subterfuge to get the records for the IRS. The IRS summons dated December 18, 1970 required production of the corporate records for the fiscal years ended April 30, 1967, April 30, 1968 and April 30, 1969. Pflaumer had contested the IRS summons and the Intelligence Division of the IRS proceeded towards enforcing it. However, after commencement of the grand jury criminal tax investigation, the Intelligence Division's investigation was consolidated into the grand jury investigation, and the Intelligence Division suspended its own enforcement efforts.

The United States Attorney maintains that his disclosure of the subpoenaed material to the IRS agents is authorized under the *first sentence* of Fed.R.Crim. P. 6(e), because the disclosure is in actuality being made to attorneys for the government for and with whom the IRS agents are working. The term "Attorney for the government" is defined by Fed.R.Crim.P. 54(c), which (in pertinent part) provides:

"As used in these rules * * *. 'Attorney for the government' means the Attorney General, an authorized

---

3. This statement was also made in a supplemental statement filed with the Court.

4. On June 21, 1971, Pflaumer moved to quash the subpoena. The motion recited that the corporation had no knowledge of the purpose of the grand jury investigation and that the investigation was nothing more than a "fishing expedition" into the books and records of the corporation. At the request of the Court, the United States Attorney then filed the factual memorandum setting forth the purpose of the grand jury investigation. This memorandum disclosed that the affairs of Pflaumer had been under investigation for approximately eighteen months, and that the grand jury's investigation had

disclosed allegations and some evidence that William Pflaumer, Jr., through the corporation, "exercises a pervasive control over bars and small beer distributors in the City of Philadelphia". After argument in chambers, we denied the motion to quash the subpoena, but modified it, granting additional time to the defendant to produce the documents before the grand jury. Furthermore, the modified order provided that the records produced before the grand jury were not to be made available to the agents or employees of the Internal Revenue Service pending a decision on the request for a protective order, which is the subject matter of this opinion.

assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney * * *."

The first sentence of Rule 6(e) reads:

"Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties."

The United States Attorney contends that disclosure is made to other personnel because of the need for specialized knowledge. He described it in a statement filed with the Court as follows:

"it is absolutely necessary, in grand jury investigations involving analysis of books and records, for the government attorneys to rely upon investigative personnel (from the government agencies) for assistance. The government attorneys are not qualified to perform the analysis personally, and such self-contained investigation is simply not contemplated in terms of evidentiary presentation ultimately in court."

The reason that we write at length in this case is that we have had difficulty in drawing dispositive instruction from the Federal Criminal Rules themselves and the cases decided under them. Our problem emerges from our inquiry as to

how far the "Attorney for the government" exception to the secrecy principle may extend in view of the myriad situations in which the United States Attorney works with and through other government agencies in developing factual material for civil and criminal actions.[5] While reaching the conclusion that the protective order must not be granted because it appears that the records in question will remain under the aegis of the United States Attorney,[6] we shall also observe, as has Professor Moore that Rule 6(e) should be clarified to articulate more precisely how a situation of the type here involved should be dealt with.[7]

## II.

In view of our preliminary statement, it would be well to recite Rule 6(e) in its entirety, again keeping in mind that it is the first sentence of Rule 6(e) upon which the government relies. Rule 6(e) provides:

*"Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties.* Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded

---

5. While this case involves assistance of agents of the IRS, the problem could also arise when the United States Attorney is assisted by employees of other departments, Labor, Agriculture, HEW, HUD, etc., or agencies, such as Customs, etc. And see fn. 30, *infra*.

6. We entered an Order on August 4, 1971 reading as follows:

"IT IS ORDERED that the motion of William H. Pflaumer & Sons, Inc. for a protective order prohibiting the grand jury and/or the United States Attorney from permitting agents, officials or employees of the Internal Revenue Service to examine or copy any of the books, records or documents delivered by William H. Pflaumer & Sons, Inc. to the grand jury pursuant

to subpoena is hereby DENIED; provided, however, that the subpoenaed material shall remain at all times under the aegis of the Attorneys for the Government. Opinion to follow."

7. See comments of Professor James William Moore, 8 Moore's Federal Practice § 6.05: "The rule [6(e)] has presented a problem, however, with respect to attorneys and non attorneys who are assisting in preparation of a case for the grand jury or in preparing a case for trial after indictment. These assistants often cannot properly perform their work without having access to grand jury minutes. Conflicting decisions as to the propriety of such access indicate a need for clarification of the rule. * * *"

testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon the showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance or execution of a warrant or summons." ⹁ (emphasis supplied). While resolution of the question before us involves a construction of this Rule, it also necessitates a broader excursion into the caselaw which upholds, and the theory which underlies, the principle of secrecy of grand jury proceedings.

Rule 6(e) was intended to implement "the long established policy that maintains the secrecy of grand jury proceedings in the federal courts". United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

Contrary to the practice in many states (including Pennsylvania), the grand jury in the federal system is invested with broad investigatory powers. Even though the grand jury receives instructions by the court, it may inquire for itself "whether a crime cognizable by the court has been committed", Hale v. Henkle, 201 U.S. 43, 65, 26 S.Ct. 370, 375, 50 L.Ed. 652 (1906). Given such broad jurisdiction, the powers of the grand jury must necessarily remain vague. An oft cited characterization of the broad powers of the grand jury appears in Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), where the Supreme Court stated that:

"it is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning."

█ Apparently in recognition of these broad powers, and in the face of the supplemental statement filed by the government to the effect that the grand jury also intended to inquire into income tax violations, Pflaumer has abandoned its original position that the subpoena for its financial records should be quashed on the ground that the grand jury's investigation constituted a "fishing expedition". Unquestionably, the grand jury is empowered to investigate alleged violations of the tax laws, as well as racketeering. *See, e. g.,* In re Goldman, 331 F.Supp. 509 (W.D.Pa.1971). There the Court enforced a grand jury subpoena requiring an attorney to appear before a special grand jury and testify regarding investigation of his client for tax evasion. The court held, *inter alia,* that 26 U.S.C. § 7602 was not the exclusive method the government had to investigate income tax affairs and that the § 7602 procedure was not intended to limit the powers of a grand jury to inquire into tax matters as well as other violations of the federal criminal laws.

█ The policy of secrecy surrounding grand jury proceedings reaches far back into the history of that institution. The reasons for that policy are generally regarded to have been set forth in United States v. Amazon Industrial Chemical Corp., 55 F.2d 254, 261 (D.Md.1931); (1) to prevent the escape of those whose indictment may be contemplated; (2) to

insure the utmost freedom to the grand jury in its deliberation, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

The wisdom of this policy of secrecy and of the reasons which underly it are most obvious while the grand jury is conducting its proceedings. However, once a grand jury has concluded its work, the courts have, to some degree, relaxed the secrecy principle.[8] Thus, grand jury testimony is commonly used without objection to refresh the recollection of government witnesses at trial,[9] and to impeach witnesses at trial.[10] The courts have also generally accepted the principle that the government itself may use the minutes of completed grand jury proceedings to prepare criminal and civil cases for trial, although the courts have not been unanimous in so holding, see *infra*. There is impressive authority that, without compelling necessity, the minutes of completed grand jury proceedings should not be made available to defendants in civil cases,[11] to certain types of government agencies, typified by the Federal Trade Commission,[12] and to governmental corporations, such as the TVA.[13] But courts will, in the exercise of their discretion, permit disclosure if the party seeking it can show that there is a compelling need for the material and such disclosure is required by the ends of justice.[14] Normally, disclosure is not permitted merely for purposes of discovery. When considering applications for disclosure, the court's task is to closely scrutinize the request against the reasons for the rule of secrecy to determine if disclosure ought to be made. We should note at this juncture that a number of the cases which we have cited deal with disclosure pursuant to that portion of the *second* sentence of Rule 6(e) permitting disclosure upon order of court preliminary to or in connec-

---

8. Commentators have also suggested that after the grand jury has concluded its investigation and an indictment has been returned, the only reason for secrecy is the need to encourage free disclosure by those who have information about crimes. *See, e. g.*, Wright, 1 Federal Practice & Procedure § 106.

9. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. National Dairy Products Corp., 263 F.Supp. 447 (D.C.Mo.1967); United States v. Johns-Manville Corp., 259 F.Supp. 440 (E.D.Pa.1966).

10. United States v. Cotter, 60 F.2d 689 (2 Cir. 1932); cert. den. 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575.

11. In the case of United States v. Proctor & Gamble Co., *supra*, Proctor & Gamble was a defendant in a civil antitrust suit brought by the government. It moved the court for discovery and production of the minutes of the grand jury proceedings in which no indictment had been returned. The government, however, had been using the grand jury transcript to prepare its civil case against Proctor & Gamble for trial. In denying that request, Mr. Justice Douglas, speaking for the Court, wrote:
 "[This] 'indispensible secrecy of grand jury proceedings' must not be broken except where there is a compelling necessity. There are instances where that need will outweigh the countervailing policy. But they must be shown with particularity." *Id.*, 356 U.S. at 682, 78 S.Ct. at 986 (citations omitted).

12. In re Grand Jury Proceedings, 309 F.2d 440 (3 Cir. 1962).

13. United States v. General Electric Co., 209 F.Supp. 197 (E.D.Pa.1962).

14. See Allis Chalmers v. City of Fort Pierce, 323 F.2d 233 (5th Cir. 1963).

tion with a judicial proceeding. Although our construction in this case is of the *first* sentence of Rule 6(e), because of the dearth of authority in the area it is necessary to draw for instruction upon the cases involving the second sentence of 6(e) as well.

Turning to a more systematic analysis of the caselaw which exists in the area of our concern, we find it to be essentially structured into a number of categories which we will number as we list them. (Actually, each case involves a combination of several categories):

*First*, there are cases involving: (1) the work of ongoing grand juries;[15] and (2) the work of completed grand juries.[16] In the case of the former, the applications are several fold: (3) some involve requests to inspect grand jury minutes.[17]; (4) others involve motions for protective orders prohibiting the use of grand jury material by or for specific purposes,[18] and (5) still others seek to abort specific lines of inquiry.[19] In cases involving the work of completed grand juries, (6) the applications generally involve requests to inspect the minutes of the completed grand jury proceedings.[20]

*Second*, there are cases which turn on the use for which material is to be put. Some cases involve applications concerning the use for the material in (7) criminal proceedings,[21] and others involving use of the materials in (8) civil proceedings.[22]

*Third*, with respect to the party seeking relief, (9) some cases involve applications by the party who is being investigated,[23] and others (10) by an actual defendant in a civil or criminal proceeding.[24]

*Fourth*, where a protective order is sought, it is sometimes (11) against the United States Attorney,[25] and (12) more often, against use of grand jury material by another government agency,[26] such as the IRS.

It is not our intention to review all of the cases. The instant case is a composite of categories (1), (4), (7), (8), (9) and (12). We will concentrate in this Opinion on the problems in the area described as (12), i. e., a protective order sought against use of grand jury material by an agency such as the IRS, for it

15. *See, e. g.*, In re the Grand Jury Proceedings (General Motors), 309 F.2d 440 (3d Cir. 1962); In re Bonanno, 344 F.2d 830 (2nd Cir. 1965).

16. *See, e. g.*, State of Washington v. American Pipe & Construction Co., 41 F.R.D. 59 (D.C.Cal.1966); United States v. Scott Paper Co., 254 F.Supp. 759 (D.C. Mich.1966).

17. *See, e. g.*, United States v. General Electric Co., 209 F.Supp. 197 (E.D.Pa. 1962); United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

18. *See, e. g.*, Application of Kelly, 19 F.R.D. 269 (S.D.N.Y.1956).

19. *See, e. g.*, In re April 1956 Term Grand Jury, 239 F.2d 263 (7 Cir. 1956).

20. *See, e. g.*, Allis-Chalmers Mfg. Co. v. City of Fort Pierce, Fla., 323 F.2d 233 (5th Cir. 1963); Atlantic City Elec. Co. v. A. B. Chance Co., 313 F.2d 431 (2nd Cir. 1963).

21. *See, e. g.*, In re Grand Jury Transcripts, 309 F.Supp. 1050 (D.C.Ohio 1970); United States v. Zirpolo, 288 F.Supp. 993 (D.N.J.1968).

22. *See, e. g.*, In re Special 1952 Grand Jury, 22 F.R.D. 102 (E.D.Pa.1958); United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

23. *See, e. g.*, In re April 1956 Term Grand Jury, 239 F.2d 263 (7 Cir. 1956).

24. *See, e. g.*, In re Grand Jury Proceedings (General Motors), 309 F.2d 440 (3d Cir. 1962); ABC Great Stores Inc. v. Globe Ticket Co., 309 F.Supp. 181 (E.D.Pa.1970); Posey v. United States, 416 F.2d 545 (C.A. 5 1969), cert. den. 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127.

25. *See, e. g.*, Application of Kelly, 19 F.R.D. 269 (S.D.N.Y.1956).

26. *See, e. g.*, In re Grand Jury Proceedings, 309 F.2d 440 (3d Cir. 1962).

is in that area that our problem arises (and the existing caselaw is the least definitive.) Our purpose in this categorization of the cases is to show that: (a) they form a sort of patchwork stemming from the fact that they arise in a wide variety of factual situations, each turning, for the most part, on its unique facts; and (b) that it is therefore difficult to draw instruction from them.[27] The "patchwork" buttresses our suggestion (*see infra*) about clarification of the relevant Rule.

Protective orders against the use of grand jury materials by government agencies have been sought as often in connection with subsequent civil, as they have in connection with criminal, proceedings. Since Pflaumer expressly questions any use of the grand jury material by the government for civil purposes, we must consider the government's right to do so as a threshold question.

In United States v. General Electric Co., 209 F.Supp. 197 (E.D.Pa.1962), the government, following a grand jury investigation of the electrical equipment industry, instituted civil actions for damages under the Clayton Act, 31 U.S.C. § 231 et seq. The Tennessee Valley Authority was co-plaintiff in five of the suits. The defendant moved the court to impound the grand jury minutes and documents, arguing that disclosure of grand jury testimony could be made to United States Attorneys only for criminal prosecution, and that the attempted use here for preparation of the civil trial violated the traditional rule of secrecy. Judge C. William Kraft, Jr., in a thoughtful opinion, after considering the reasons for that policy, concluded that Federal Rule 6(e), reasonably construed, authorized the use by the government attorneys of the grand jury material in the civil actions for damages.[28]

Similarly, in the case of In Re Petroleum Industry Investigation, 152 F. Supp. 646 (E.D.Va.1957), the oil companies sought to prevent the use by the government attorneys of the information contained in the grand jury documents for a purpose different from that for which they were subpoenaed. Counsel for the government argued that such a restriction on the use by the government would be unrealistic and unsound. In denying the corporation's application, the court pointed out:

> "The obligation of the Justice Department to invoke civil remedies in an appropriate situation is just as bounden as its duty to institute requisite criminal proceedings. Consequently, if books and papers coming to the knowledge of the Government's attorneys in a grand jury investigation develop a demand, and an adequacy of proof, for resort to civil litigation in the public interest, it is certainly proper, indeed incumbent upon them, to use for that purpose the information in their hands. This is nonetheless true though no process available in a civil action has the competency to discover this data beforehand." *Id.* at 647.

■ We elect to follow these cases and hold that the mere fact that the government contemplates possible use of the subpoenaed material in a possible future civil proceeding is no grounds for a protective order.

### III.

We turn now to the question of whether a protective order should be

---

**27.** To some extent, the divergence in the cases also stems from differing views on the policy of Grand Jury secrecy. Some view it as a pillar of freedom, United States v. Proctor & Gamble Co., supra, others as an anachronism. *Cf.* Grand Jury Minutes: The Unreasonable Rule of Secrecy 1962, 48 Va.L.Rev. 668.

**28.** However, the material was not to be made available to the attorneys for the Tennessee Valley Authority because they did not fall within the purview of the first sentence of Rule 6(e); i. e., they were not attorneys for the government as defined by Rule 54(c). See *infra*.

granted because of the entrustment of the materials in the manner described to agents of the IRS.[29] One case which might be apposite is Application of Kelly, 19 F.R.D. 269 (S.D.N.Y.1956), where a union president sought an order vacating and quashing a subpoena duces tecum covering all union records over a six-year period to be used in a grand jury investigation. In the alternative, the union official sought a protective order to prevent disclosure of the records to any unauthorized persons. The United States Attorney represented to the court that only members of his staff and accountants of the FBI and the IRS would examine the records, and that information derived from such examination was intended for formal presentation to the grand jury and would not be disclosed to "unauthorized persons". No question was raised about the rights of the United States Attorney to seek the assistance of the agents of the IRS or FBI in evaluating the grand jury material, or the right of the IRS or the FBI to utilize the records independent of the grand jury inquiry. The questions raised in this case were thus assumed in *Kelly*. The decision concerned the right of "unauthorized persons" other than the United States Attorney, IRS or FBI, with whom the union was or might be engaged in civil litigation, to have access to the records, and in view of the United States Attorney's representations, the court denied the motion to quash.

Our research has revealed three other cases which shed light upon our problem.

In the case of In re April 1956 Term Grand Jury, 239 F.2d 263 (7 Cir. 1956), the court refused to permit the government to use the grand jury records in connection with a civil tax suit, in view of its finding evidence of an improper motive on the government's part. The rather involved facts of that case are as follows: The Treasury Department began investigating the petitioners (a corporation and various officers) in 1948. In 1952, several of the petitioners were convicted for wilfully and knowingly attempting to evade income tax for the calendar years 1945 and 1946. The court of appeals reversed with instructions to suppress certain evidence and re-try the case. In 1954, after trial of the original criminal case, the Treasury Department commenced a new and complete audit of the petitioners for 1947 and subsequent years. A departmental subpoena was issued in June 1954 calling for certain records of the corporation which were made available for examination. In October 1954, another subpoena was issued calling for additional records which the corporation refused to deliver. Thereafter, in September and October 1955, new departmental subpoenas were issued and a jeopardy assessment and levy was made against the corporation for the years 1944–46, which the district court voided. Petitioners refused to comply with the outstanding subpoenas because, they contended, the records had been repeatedly made available to the government for examination and so could not be recalled for reexamination under the tax code. They also asserted that the subpoenas constituted an unreasonable and unnecessary harassment and persecution. The Treasury Department did not attempt to enforce compliance with these, but instead recommended to the Department of Justice that a grand jury investigation be undertaken to determine whether criminal proceedings

29. In view of the fact that Rule 54(c) expressly encompasses Assistant United States Attorneys, it was held in United States v. District Court, 238 F.2d 713 (4 Cir. 1956), that the district court erred in forbidding government counsel assisting in the grand jury investigation from having a transcript of the testimony to use in conference with their superiors. However, *cf.* In re Holovachka, 317 F.2d 834 (1963), where the Seventh Circuit held that the term "attorneys for the government" does not include the attorney general of a state, or his assistants.

should be initiated against several of the petitioners. Thereafter, the April 1956 term grand jury commenced an investigation into the affairs of several of the petitioners. The grand jury then issued its own subpoenas, with which the petitioners complied, and the United States Attorney turned the records over to the treasury agents for evaluation. These subpoenas largely duplicated the Treasury's administrative subpoenas of 1954 and 1955 for 1947 and subsequent years. At the time of these transactions, there were pending in the United States Tax Court eight cases involving a tax liability of petitioners in which Treasury counsel had repeatedly asserted need for more investigation and preparation. The petitioners, *inter alia*, objected to the grand jury subpoenas, claiming that they were nothing more than a subterfuge by the Treasury Department to obtain the books and records that they could not obtain through their own outstanding subpoenas.

The court permitted the grand jury to turn over to third persons, including the treasury agents, the documents and records of the grand jury, but with the restrictions that (1) such examination was for the purpose of assisting the grand jury in its work; and (2) could be used for a criminal investigation only. The court trenchantly stated:

> "The uncontradicted facts in this case in themselves point to an additional reason. The government had by various administrative subpoenas endeavored to gain access to the documents and records referred to in the petition. Having failed in that effort, government counsel made no effort to compel compliance with said subpoenas. Evidently they abandoned all civil procedures available to them. Instead they resorted to grand jury subpoenas and thereby brought those documents and records before the grand jury. With the consent of the grand jury this material has been turned over to treasury agents, who, with

their assistants, have been examining it. If these efforts are directed toward the procuring of evidence for civil proceedings now or hereafter pending against petitioners, and that purpose is accomplished, then the secrecy of the grand jury has been breached. We find nothing in the history of the grand jury to justify the perversion of its functions or machinery by third persons for the purposes of a civil proceeding. The Fifth Amendment's adoption of the grand jury for use in the United States was for the historic purpose of initiating prosecutions for serious crimes. With the grand jury came its time-honored policy of secrecy. The idea that information obtained from the perusal of material in the possession of a grand jury may be used for the purpose of a civil proceeding is in direct conflict with the policy of secrecy of grand jury proceedings.

> Moreover, the public has an interest in maintaining the secrecy of the grand jury. This is because the grand jury is the direct, independent representative of the people as a whole rather than those brought before it. The application of secrecy to its proceedings is a safeguard for the grand jury itself, because it tends to prevent it from being used as an instrument for explorations in aid of civil proceedings. Otherwise such misuse of the grand jury's time and functions might in a substantial degree interfere with its investigation of crime and the return of indictments and no bills." *Id.* at 271–272.

In re Grand Jury Proceedings, 309 F. 2d 440 (1962) was a Third Circuit case, in which attorneys for the Federal Trade Commission sought leave to inspect a copy of documents and testimony of grand jury proceedings. Five separate grand juries had returned 29 indictments charging 29 manufacturers of heavy electrical equipment, and 47 corporate officers, with violations of Sec-

tion 1 of the Sherman Act, 15 U.S.C. § 1. Subsequent convictions of the corporate defendants in criminal actions prompted an investigation by the Federal Trade Commission of possible violations of outstanding cease and desist orders. Access to the grand jury proceedings was sought to aid the Commission in its investigation, and denied by the district court. The court of appeals affirmed, holding, *inter alia*, that attorneys for the Commission were not included within the rule permitting attorneys for the government to obtain disclosure of grand jury proceedings. The court also based its holding in part upon its finding that the Commission was seeking a private disclosure in aid of an administrative investigation. Similarly, in United States v. General Electric Co., *supra*, Judge Kraft held that attorneys for the Tennessee Valley Authority, a corporation wholly owned by the United States, were not within the purview of Rule 6(e), and thus grand jury documents and testimony were not available for use by them in the preparation and trial of civil damage suits.

■ As we have said, Rule 6(e), through Rule 54(c), expressly encompasses all Assistant United States Attorneys, such as the prosecutor involved here. But how far outward does the Rule extend? It does not extend to attorneys for certain types of government agencies, such as the FTC or TVA.[30] In re Grand Jury Proceedings and United States v. General Electric Co., *supra.* Such result does not seem untoward: the FTC is an independent administrative agency, a hybrid whose functions are part executive, part legislative and part judicial; the TVA is a quasi-governmental corporation and is not really an administrative agency at all.

■ Nor do we have difficulty with the principle assumed in the *Kelly* case and decided in the *April 1956 Term Grand Jury* case—that representatives of government agencies actively assisting the United States Attorney in a grand jury investigation and working under his direction and control may have access to the grand jury material for such purpose. As the United States Attorney set forth in his statement filed with the Court, he is accustomed to working with and through other government agencies. A fuller exegesis of his position (as set forth in the statement filed with the Court) is as follows.

Even though investigative agents are assigned by the various agencies to assist the government's attorneys, they are never assigned in a capacity which separates them operationally from their agencies. No matter what agency they work for, they are required to submit reports to their agencies and are subject to supervision within each particular agency. Apparently, this is a constant practice throughout the federal law enforcement system. The interrelationship between the IRS and the Department of Justice illustrates how this works in practice. The Department of Justice depends upon the IRS entirely for the investigation of tax crimes, and all tax prosecutions are undertaken only upon the recommendation of the IRS. A tax prosecution is, in the first instance, recommended by the IRS agent assigned to a given case. The special agents, however, are not authorized under their regulations to transmit their recommendations directly to the government attorneys or to the grand jury. The recommendations must first be reviewed by their district chief and then by the regional counsel for that area. Only then

---

30. It is impossible to delineate, either from the record here, the cases, or the Rule itself just what "types" of government agencies may, for purposes of Rule 6(e), assist the United States Attorney. Our use of the term "agency" is for purposes of convenience. *Cf.* United States v. American Tobacco Co., 177 F. 774 (W.D. Ky.) (Disclosure to ICC Expert), see Fn. 5.

is the recommendation transmitted to the Department of Justice, and only then are the special agents authorized to testify before the grand jury. In addition, at every stage of the investigation the agents are under the direct supervision of their superiors to whom reports are regularly submitted. While the government attorney who receives the assistance of those agents receives, in effect, the assistance of the entire agency, the effect of this relationship is that, despite the assignment to assist the United States Attorney in his work before the grand jury, these agents are still agents of the IRS. It is these factors, built into the grand jury investigative process, that Rule 6(e) does not come to grips with.

In view of the foregoing, to hold: (1) that agents of the IRS may use the documents and records to assist the United States Attorney with respect to criminal matters; and (2) that the records and documents may be used for any criminal or civil violations that appear (see United States v. General Electric Co., *supra*), but then to say: (3) that the documents and records, when they are being processed through the agency itself and are beyond the immediate control of the United States Attorney lose their viability, seems to us to be questionable.[31] The United States Attorney believes the latter statement to be not just questionable, but incorrect, and adds in support of his view that anything that the assisting agents discover, even though processed through regular agency channels, will ultimately be turned over to

the Department of Justice for use by the government attorneys.

On the other hand, the countervailing considerations are far from insubstantial. This is particularly so in view of the wide-ranging investigative powers of federal grand juries. If there were no brakes upon the power of the government to set a grand jury upon an investigative course for the sole purpose of obtaining records to submit to a government agency for investigation, then our liberties would indeed be insecure, notwithstanding that the court can review the good faith questions, as the Seventh Circuit did in In re April 1956 Term Grand Jury, *supra*, and as we will do in the next succeeding section of this Opinion.

It is for the foregoing reasons that we suggest that Rule 6(e) be reevaluated and clarified by the Supreme Court Rules Committee.

 In the present case, the agency in question (IRS, a part of the Treasury Department) lies within the executive branch of the government, as opposed to being an independent government agency. Moreover, on the record as it is now before us, it appears: (1) that with respect to the criminal tax investigation, the entire investigation will be conducted under the aegis of the United States Attorney's Office; and (2) that with respect to any possible civil tax investigation, there is no present prospect that the records will be removed from the aegis of the United States Attorney. Accordingly, subject

---

31. We note that the advisory committee notes on the Rules do not inveigh against this conclusion. The notes to Rule 54(c) merely advert, in connection with the definition of attorneys for the government, to certain sections of Title V, U.S.C. (new Title 28). These sections deal with the establishment and procedures of the Department of Justice. And the advisory committee notes of Rule 6(e) merely say that the Rule "continues the traditional practice of secrecy on the part of members of the grand jury, except when the court permits a disclosure * * *." Arguably, it is possible that the drafters intended only personnel of the Department of Justice to be included within the rule. The cases, however, have gone beyond permitting disclosure only to attorneys for the Department of Justice. It is unclear, both from the cases construing the Rule and the language of the drafters, just what the drafters intended.

to our determination on the good faith issue (*see infra*), we deny the motion for a protective order and thereby refuse to bar the IRS agents access to the records so long as they remain under the aegis of attorneys for the government, i. e., the United States Attorney for the Eastern District of Pennsylvania and his Assistants, including those Assistant United States Attorneys from the Washington based "Strike Force" who are assigned to the case. We need not reach the question of what will happen if and when the United States Attorney releases the grand jury documents, independent of its aegis, to IRS.

### IV.

We turn finally to the question of whether the government acted in bad faith when the IRS abandoned its tax investigation and consolidated the matter with the ongoing criminal investigation into Pflaumer's affairs. This question is raised because of the precedent of In re April 1956 Term Grand Jury, *supra*, where the court found that the grand jury investigation was a mere subterfuge to obtain records that could not otherwise be obtained in a civil investigation.

Here, we have been presented with no showing of bad faith. The United States Attorney had been conducting a racketeering investigation into the affairs of Pflaumer; meanwhile the IRS had been conducting a tax investigation involving the same books and records which were relevant to the racketeering investigation. The United States Attorney then enlarged the scope of the grand jury investigation to include tax matters. While it is true that the civil summons proceedings were permitted to lapse in view of the grand jury proceedings where the records were already available, we do not view these facts as making for a record of dimensions simi-

lar to the *1956 Grand Jury* case, requiring the granting of a protective order. A strong showing indeed must be made before a court should interfere with the orderly processes of a grand jury.

### V.

For all of the foregoing reasons, Pflaumer's motion for a protective order is denied in accordance with the terms of our August 1971 Order (see footnote 6).[32]

---

32. Our Order is, of course, without prejudice to the right of Pflaumer to raise other objections as the need for same may arise during the course of the proceedings.