# UNITED STATES *v.* PROCTER & GAMBLE CO. ET AL.

No. 51.   Argued April 28, 1958.—Decided June 2, 1958.

*Robert A. Bicks* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Hansen, Daniel M. Friedman* and *W. Louise Florencourt.*

*Kenneth C. Royall* argued the cause for the Procter & Gamble Co., appellee. With him on the brief were *Charles Sawyer, Richard W. Barrett, Frederick W. R. Pride* and *H. Allen Lochner.*

*Mathias F. Correa* argued the cause for the Colgate-Palmolive Co., appellee. With him on the brief were *Jerrold G. Van Cise* and *James B. Henry, Jr.*

*Abe Fortas* argued the cause for the Lever Brothers Co., appellee. With him on the brief were *William L. McGovern* and *Abe Krash.*

*James T. Welch* and *Shelby Fitze* filed a brief for the Association of American Soap & Glycerine Producers, Inc., appellee.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is a civil suit brought under § 4 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 4, to enjoin alleged violations of § 1 and § 2 of the Act. The civil suit was filed on the heels of a grand jury investigation in which no indictment was returned. The Government is using the grand jury transcript to prepare the civil case for trial; and appellees, who are defendants in that suit, desire the same privilege. They moved for discovery and production of the minutes under the Rules of Civil Procedure.[1] The District Court granted the motion, ruling that appellees had shown "good cause" as required by Rule 34.[2] It rested on the ground that the Govern-

---

[1] Appellee, Colgate-Palmolive Co., moved under Rule 6 (e) of the Rules of Criminal Procedure, note 5, *infra.*

[2] Rule 34 provides in part:

"Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30 (b), the court in which an action is pending may (1) order any

ment was using the transcript in preparation for trial, that it would be useful to appellees in their preparation, that only in this way could appellees get the information. These reasons, the court held, outweighed the reasons behind the policy for maintaining secrecy of the grand jury proceedings. 19 F. R. D. 122, 128.

The District Court entered orders directing the Government to produce the transcript in 30 days and to permit appellees to inspect and copy it. The Government, adamant in its refusal to obey, filed a motion in the District Court requesting that those orders be amended to provide that, if production were not made, the court would dismiss the complaint. Alternatively, the Government moved the District Court to stay the order pending the filing of an appeal and an application for extraordinary writ. Appellees did not oppose the motion; and the District Court entered an amended order providing that, unless the Government released the transcript by August 24, 1956, "the Court will enter an order dismissing the complaint." [3] As the Government per-

---

party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, . . . not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26 (b) and which are in his possession, custody, or control . . . ."

[3] Rule 37 (b) (2) provides:

"If any party . . . refuses to obey . . . an order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing . . . , the court may make such orders in regard to the refusal as are just, and among others the following:

"(i) An order that . . . the contents of the paper . . . or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(ii) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from

sisted in its refusal, the District Court entered judgment of dismissal. The case is here by way of appeal, 32 Stat. 823, as amended, 62 Stat. 869, 989, 15 U. S. C. § 29. We postponed the question of jurisdiction to argument on the merits. 352 U. S. 997.

*First.* The orders of dismissal were final orders, ending the case.[4] See *United States* v. *Wallace & Tiernan Co.,* 336 U. S. 793.

Appellees urge that this appeal may not be maintained because dismissal of the complaint was solicited by the Government. They invoke the familiar rule that a plaintiff who has voluntarily dismissed his complaint may not sue out a writ of error. See *Evans* v. *Phillips,* 4 Wheat. 73; *United States* v. *Babbitt,* 104 U. S. 767. The rule has no application here. The Government at all times opposed the production orders. It might of course have tested their validity in other ways, for example, by the route of civil contempt. Yet it is understandable why a more conventional way of getting review of the adverse ruling might be sought and any unseemly conflict with the District Court avoided. When

---

introducing in evidence designated documents or things or items of testimony . . . ;

"(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

"(iv) In lieu of any of the foregoing orders or in addition thereto, an order directing the arrest of any party or agent of a party for disobeying any of such orders . . . ."

[4] Rule 41 (b) provides in part:

"Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

While Rule 41 (b) covers motions to dismiss made by defendants, the portion quoted shows that it is not restricted to that situation.

the Government proposed dismissal for failure to obey, it had lost on the merits and was only seeking an expeditious review. This case is therefore like *Thomsen* v. *Cayser,* 243 U. S. 66, where the losing party got the lower court to dismiss the complaint rather than remand for a new trial, so that it could get review in this Court. The court, in denying the motion to dismiss, said

> "The plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they might come to this court without further delay." *Id.,* at 83.

*Second.* On the merits we have concluded that "good cause," as used in Rule 34, was not established. The Government as a litigant is, of course, subject to the rules of discovery. At the same time, we start with a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.[5] See *United States* v. *Johnson,* 319 U. S. 503, 513; *Costello* v. *United States,* 350 U. S. 359, 362. The reasons are varied.[6] One

---

[5] Rule 6 (e) of the Rules of Criminal Procedure provides in part:

"Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule."

[6] In *United States* v. *Rose,* 215 F. 2d 617, 628–629, those reasons were summarized as follows:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or

is to encourage all witnesses to step forward and testify freely without fear of retaliation. The witnesses in antitrust suits may be employees or even officers of potential defendants, or their customers, their competitors, their suppliers. The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow. This "indispensable secrecy of grand jury proceedings," *United States* v. *Johnson, supra,* at 513, must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity.

No such showing was made here. The relevancy and usefulness of the testimony sought were, of course, sufficiently established. If the grand jury transcript were made available, discovery through depositions, which might involve delay and substantial costs, would be avoided. Yet these showings fall short of proof that without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done. Modern instruments of discovery serve a useful purpose, as we noted in *Hickman* v. *Taylor,* 329 U. S. 495. They together with pretrial procedures make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent. *Id.,* at 501. Only strong public policies weigh against disclosure. They were present in *Hickman*

---

their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

v. *Taylor, supra,* for there the information sought was in
the trial notes of the opposing lawyer.   They are present
here because of the policy of secrecy of grand jury pro-
ceedings.   We do not reach in this case problems con-
cerning the use of the grand jury transcript at the trial
to impeach a witness, to refresh his recollection, to test
his credibility and the like.[7]   Those are cases of particu-
larized need where the secrecy of the proceedings is lifted
discretely and limitedly.   We only hold that no com-
pelling necessity has been shown for the *wholesale* dis-
covery and production of a grand jury transcript under
Rule 34.   We hold that a much more particularized, more
discrete showing of need is necessary to establish "good
cause."   The court made no such particularized finding
of need in case of any one witness.   It ordered that the
entire transcript be delivered over to the appellees.   It
undoubtedly was influenced by the fact that this type
of case is complex, long drawn out, and expensive to
prosecute and defend.   It also seemed to have been
influenced by the fact that the prosecution was using
criminal procedures to elicit evidence in a civil case.   If
the prosecution were using that device, it would be flout-
ing the policy of the law.   For in these Sherman Act
cases Congress has guarded against *in camera* proceedings
by providing that "the taking of depositions . . . shall
be open to the public" and that no order excluding the
public shall be valid.   37 Stat. 731, 15 U. S. C. § 30.

We cannot condemn the Government for any such
practice in this case.   There is no finding that the grand
jury proceeding was used as a short cut to goals otherwise
barred or more difficult to reach.   It is true that no
indictment was returned in the present case.   But that is
no reflection on the integrity of the prosecution.   For all

---

[7] See, *e. g., United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150,
234.   Cf. *Jencks* v. *United States,* 353 U. S. 657.

we know, the trails that looked fresh at the start faded along the way. What seemed at the beginning to be a case with a criminal cast apparently took on a different character as the events and transactions were disclosed. The fact that a criminal case failed does not mean that the evidence obtained could not be used in a civil case. It is only when the criminal procedure is subverted that "good cause" for *wholesale* discovery and production of a grand jury transcript would be warranted. No such showing was made here.

*Reversed.*

Mr. Justice Whittaker, concurring:

Believing that appellees did not make a sufficient showing ·of such exceptional and particularized need for the grand jury minutes as justified wholesale invasion of their secrecy in the circumstances of this case, I concur in the Court's decision, but desire to add a word.

Although a "no true bill" was voted· by the grand jury in this case—and, hence, the Government's attorneys, agents and investigators were then through with the grand jury proceedings, if they were conducted for lawful purposes—the Government admits that it has used the grand jury minutes and transcripts in its preparation, and that it intends to use them in its prosecution, of this civil case. Appellees suggest, principally on the basis that no indictment was prepared, presented to or asked of the grand jury, that the Government's purpose in conducting the grand jury investigation was to obtain, *ex parte,* direct or derivative evidence for its use in this civil suit which then was contemplated. But the District Court made no finding of such a fact. However, it is obvious that such could be, and probably has often been, the real purpose of grand jury investigations in like cases. The grand jury minutes and transcripts are not the property of the Government's attorneys, agents or

investigators, nor are they entitled to possession of them in such a case. Instead those documents are records of the court. And it seems clear that where, as here, a "no true bill" has been voted, their secrecy, which the law wisely provides, may be as fully violated by disclosure to and use by the government counsel, agents and investigators as by the defendants' counsel in such a civil suit.

In order to maintain the secrecy of grand jury proceedings; to eliminate the temptation to conduct grand jury investigations as a means of *ex parte* procurement of direct or derivative evidence for use in a contemplated civil suit; and to eliminate, so far as possible, fundamental unfairness and inequality by permitting the Government's attorneys, agents and investigators to possess and use such materials while denying like possession and use by attorneys for the defendants in such a case, I would adopt a rule requiring that the grand jury minutes and transcripts and all copies thereof and memoranda made therefrom, in cases where a "no true bill" has been voted, be promptly upon return sealed and impounded with the clerk of the court, subject to inspection by any party to such a civil suit only upon order of the court made, after notice and hearing, upon a showing of such exceptional and particularized need as is necessary to establish "good cause," in the circumstances, under Rule 34. Surely such an order may still be made by the trial court in this case.

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANKFURTER and MR. JUSTICE BURTON join, dissenting.

The Court reverses the judgment below without so much as adverting to what seems to me the real and only question in the case: Did the District Court *abuse its discretion* by ordering the Government to furnish the appellees with the transcript of the grand jury proceedings?

I do not believe this question can be avoided or obscured by casting the issue in terms of whether the appellees made an adequate showing of "good cause" under Rule 34 for the discovery which they sought and gained. What constitutes "good cause" under Rule 34 necessarily turns on the facts and circumstances of each particular case, and in the last analysis rests within the sound discretion of the trial court. 4 Moore's Federal Practice (2d ed. 1950) § 34.08.

Viewing the matter in this light, I do not think it can be said that the lower court was guilty of an abuse of discretion. A cursory statement of the setting in which appellees were accorded access to the grand jury transcript should suffice to make this clear. By any standards this antitrust litigation was of great magnitude and complexity. In 1956, when discovery was ordered, the litigation had been pending for over three years, and despite the assiduous efforts of the court to bring the issues within manageable compass, the case seems still to have been far removed from a posture where trial was in sight. The discovery order was the subject of elaborate briefing and oral argument, during the course of which the court found itself handicapped by the refusal of the Government to indicate the exact use it had made, and intended to make, of the grand jury transcript in conection with its preparation and trial of the case.[1]

---

[1] The following is taken from the District Court's opinion:

". . . during the oral argument of these motions the court asked Mr. McDowell, plaintiff's attorney, the following questions:

" 'Mr. McDowell, do you object to submitting a detailed affidavit stating exactly (a) what use, if any, plaintiff has made in the past of the grand jury transcripts while preparing for the trial of this case; (b) what use, if any, plaintiff intends to make of the transcripts during its future preparation for the trial; (c) what use, if any, plaintiff intends to make of the transcripts during the trial.'

"He wished to confer with his superiors in the Department of Justice

In granting discovery the District Court wrote a reasoned opinion in which it found: (1) that the Government had filed its complaint in this civil suit following an eighteen-month grand jury investigation, which had ended some four years before the discovery order without an indictment being returned;[2] (2) that the Government had made continuing use of the grand jury transcript in its preparation of the civil case; (3) that "the ends of justice" required that appellees be given reciprocal access to such transcript in aid of the preparation of their defense;[3] and (4) that disclosure would not in the circumstances violate the traditional reasons for safeguarding the secrecy of grand jury proceedings.[4]

---

before deciding if he would answer the questions. The court awaited candid answers—but in vain. For Mr. McDowell wrote:

" 'The questions which you put to me at the hearing on December 12th relating to the use by the government of transcripts of grand jury testimony have been given serious consideration within the Department of Justice. I am instructed respectfully to inform you that we do not wish to add to the statement which I made at the hearing.'

"His 'statement' at the hearing did not answer the questions. Because the plaintiff arbitrarily has refused to answer the court's questions relating to any use of these transcripts, the court has been denied helpful information and as a result has been forced to seek its answers elsewhere."

[2] In response to questions put at oral argument, government counsel informed us that the Government had not requested the grand jury to return an indictment.

[3] In the Appendix to its opinion, which reviews some of the prior proceedings, the District Court refers to the following comment made by it at an earlier stage of the case:

" 'One of my concerns is that since plaintiff has been preparing its case for probably three years, or longer, how long must we wait for defendants to prepare their case? The sooner defendants are informed of plaintiff's factual contentions, the sooner defense preparation can commence—and not before, obviously.' "

[4] See *United States* v. *Rose,* 215 F. 2d 617, 628–629, quoted from in footnote 6 of the Court's opinion.

The following quotation from the District Court's opinion reveals its alert and sensitive concern over unnecessary disclosure of grand jury proceedings:

"I realize there is a strong caveat against the needless intrusion upon the indispensable secrecy of grand jury proceedings. The reasons therefor were indelibly impressed upon me when I served as Assistant Prosecutor of my home county for ten years where I spent the greater part of the time presenting cases to the grand jury. I realize further that a strong and positive showing should be required of persons seeking to break the seal of secrecy, which never should be done except in extreme instances to prevent clear injustice or an abuse of judicial processes. Which policy should be served here to bring about justice—the policy requiring secrecy, or the policy permitting disclosure for discovery purposes only in the interest of justice? I believe the requirement of secrecy in this case can be safely waived and the minutes of the grand jury divulged within the limits prescribed by the law, and that the failure to do so would be an abuse of discretion and not in the furtherance of justice. Under Rule 6 (e) of the Federal Rules of Criminal Procedure our courts have, by way of interpretation, extended their jurisdiction so as to remove 'the veil of secrecy' around grand jury proceedings where, in the court's discretion, the furtherance of justice requires it. If it can be done on the criminal side, I can see no compelling reason why it cannot be safely done on the civil side in this case. I would not grant these motions if I thought they were prejudicial to the public interest, useless or unnecessary, would not reveal the information sought, or defendants already possessed all the necessary information or could obtain it by pursuing a different remedy."

The findings of the District Court as to what the procedural situation in this complicated case fairly required, made as they were by a judge who had been in charge of this case from the beginning, should not be disturbed by this Court any more lightly than findings made after a trial on the merits. Cf. *United States* v. *Yellow Cab Co.*, 338 U. S. 338; *United States* v. *Oregon State Medical Society*, 343 U. S. 326.

The Court recognizes that had the Government's grand jury investigation been *instituted* solely in aid of a civil suit—that is without any thought of obtaining an indictment—the appellees would then have been entitled to see the entire grand jury transcript. Although it may be true that no finding has been made here of such misuse of the grand jury process, I am unable to see why the case where a grand jury investigation has aborted and the Government thereafter uses the transcript solely in aid of its civil case should be treated differently. The only distinction relates to the Government's motive in instituting the grand jury proceedings. For in both instances the effect on the litigation is precisely the same, and in both instances the Government's conduct disrespects the policy underlying 37 Stat. 731, 15 U. S. C. § 30,[5] requiring the testimony of witnesses in government Sherman Act equity suits to be taken in public. In neither type of case should the Court undertake to lay down a fixed rule concerning disclosure of grand jury transcripts, but instead should leave the matter to the sound discretion of the

---

[5] "[In] the taking of depositions of witnesses for use in any suit in equity brought by the United States under the [Sherman Act], and in the hearings before any examiner or special master appointed to take testimony therein, the proceedings shall be open to the public as freely as are trials in open court; and no order excluding the public from attendance on any such proceedings shall be valid or enforceable."

trial judge, to be dealt with by him in light of the particular circumstances of each case.

I fully subscribe to the view that the strong public policy of preserving the secrecy of grand jury proceedings should prevent the general disclosure of a grand jury transcript except in the rarest cases. But the inflexible rule announced today, which allows that policy to be overcome *only* in instances where it can be shown that the Government has "subverted" the grand jury process in the manner suggested by the Court, seems to me an unwise and unnecessary curbing of trial judges in the efficient and fair handling of the difficult problems presented by a unique type of litigation. See the Prettyman Report on Procedure in Anti-Trust and other Protracted Cases, 13 F. R. D. 62, which has been adopted by the Judicial Conference of the United States. This is particularly so in cases like the one before us, where the grand jury's functions have long since ended. See *United States* v. *Socony-Vacuum Oil Co.*, 310 U. S. 150, 233–234; 8 Wigmore, Evidence (3d ed. 1940), § 2362. Here as elsewhere in the realm of discretionary power appellate review should be the safeguard against abuse in particular instances, rather than the *a priori* imposition of rigid restrictions upon trial judges which leave them powerless to act in appropriate cases. Under the facts shown by this record, I am unable to say that the District Court abused its discretion in ordering the grand jury transcript to be made available to the appellees.