George P. **BAKER** et al., **Plaintiffs-Appellees,**

v.

**UNITED STATES STEEL CORPORATION** et al., **Defendants-Appellants,**

**Edgewater Steel Company, Defendant.**

**Nos. 386, 596 to 599, Dockets 73-2200, 73-2218, 73-2394 to 73-2396.**

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1973.

Decided Feb. 25, 1974.

Haliburton Fales, 2d, New York City (Thomas McGanney, J. Michael Brown, James Rossi, White & Case, New York City, of counsel), for defendant-appellant U. S. Steel Corp.

Cravath, Swaine & Moore, New York City (Edward C. Perkins, Asst. Gen. Counsel, Bethlehem, Pa.), for defendant-appellant Bethlehem Steel Corp.

Breed, Abbott & Morgan, New York City (Donald da Parma, New York City, of counsel), for defendant-appellant Armco Steel Corp.

Morgan, Lewis & Bockius, Philadelphia, Pa. (Miles W. Kirkpatrick, Philadelphia, Pa., of counsel), for defendant-appellant Baldwin-Lima-Hamilton Corp.

Milbank, Tweed, Hadley & McCloy, New York City (William E. Jackson, Briscoe R. Smith, New York City, of counsel), for defendant-appellant Abex Corp.

Dennis N. Garvey, New Haven, Conn. (John E. Lee, Garvey, Colleran, Weiner & Levy, P. C., New Haven, Conn., of counsel), for plaintiffs-appellees.

Before KAUFMAN, Chief Judge, and LUMBARD and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Appellants, who are the defendants in a rather hoary private civil antitrust action pending before Judge Newman in the District of Connecticut, seek review of an order entered by Judge Wyatt in the Southern District of New York transmitting to the Connecticut district court, at Judge Newman's request, transcripts of testimony given years earlier before a grand jury in the New York district which had filed an indictment against the defendants based on the same charges later asserted in the civil suit. Appellant United States Steel Corporation, alone, has also appealed from an order by Judge Newman, dated November 2, 1973, denying a stay of the release to plaintiffs of redacted portions of the transcripts, which appeal was consolidated with the pending appeal from Judge Wyatt's order by an order of this Court dated November 9, 1973. Since we find these interlocutory orders

to be non-appealable, we must dismiss these appeals.

On April 2, 1963, a grand jury sitting in the Southern District of New York filed an indictment against five manufacturers of steel railroad wheels charging a conspiracy in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, to fix the price of railroad wheels at artificially high levels. The criminal case was terminated upon the court's acceptance of *nolo contendere* pleas by the defendants. Approximately four years later the Trustees of the New Haven Railroad, to whose interest the Trustees of the Penn Central succeeded as plaintiffs, commenced a civil antitrust suit in the District of Connecticut which, tracking the allegations of the indictment, sought treble damages against the same five defendants [1] for alleged overcharges for railroad wheels during the period from 1948 to 1967.

After the civil action, still in the discovery stage, had languished for another five years or so plaintiffs sought transcripts of testimony given by seven witnesses before the New York district's grand jury, who at the time of testifying were officials of the defendants but are now deceased. Plaintiffs were unable to satisfy the test of showing a "particularized need for the testimony," see Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L. Ed.2d 1323 (1959); United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); In re Biaggi, 478 F.2d 489, 491 (2d Cir. 1973), their object being to use the transcripts as "leads" to evidence that might support their claims. However, they succeeded in persuading Judge Newman that the particularized need test should

not be applied in this case since some of the considerations which underlay it no longer existed.[2] As a result he ruled that "only a slight need for disclosure will be sufficient" and that the public interest against unwarranted disclosure could be protected by his examining the transcripts *in camera* and redacting those portions not relevant to the civil suit, including names and comments of grand jurors as well as parties and activities not charged in the criminal and civil proceedings.

Lacking custody or control over the New York district's grand jury minutes, Judge Newman adopted a procedure suggested by the District of Columbia Court of Appeals in Gibson v. United States, 131 U.S.App.D.C. 143, 403 F.2d 166 (1968). As part of his decision he certified to the Southern District of New York that the grand jury testimony sought by plaintiffs should be reviewed by him *in camera* for disclosure in the Connecticut proceeding and requested the New York district court to forward the transcripts to him for that purpose. Counsel for the defendants then asked the Southern District of New York for a hearing on the request, which was held by Judge Wyatt on June 27, 1973. For that purpose a civil miscellaneous proceeding entitled "In the Matter of the Grand Jury Proceedings from the United States District Court, District of Connecticut; Re: George P. Baker, et al. v. United States Steel Corp., et al., Civil M 11–188" was established. Upon hearing the parties Judge Wyatt indicated that he did not propose to sit in review of Judge Newman's decision and that for "reasons of judicial administration" he was inclined to grant Judge Newman's request. On the following

1. The civil suit also named as defendants two railroad wheel manufacturers not included in the prior criminal case.

2. The court took the view that secrecy was no longer required to prevent escape of persons who might be indicted, to avoid harassment of the grand jury, or to protect an innocent accused. However, public release of proceedings before a grand jury that has been discharged can still deter future grand

jury deliberations and inhibit free and full revelation to grand juries in the future of all relevant evidence. A witness who knows that his testimony may eventually be made public may be more reluctant to furnish his best recollection of all facts known to him than one who is assured of secrecy. Similarly a grand jury aware of this risk may be more guarded or circumspect in its discussions and deliberations.

day Judge Wyatt filed a short memorandum decision granting the request.

Defendants immediately appealed from Judge Wyatt's order to this court and on July 30, 1973, we denied their motion for a stay of that order. We also denied plaintiffs' motion to dismiss the appeal without prejudice to its being reargued upon argument of the appeal. The transcripts of some 951 pages of grand jury testimony were then forwarded to Judge Newman who, after reviewing them *in camera*, sealed all or portions of 378 pages as involving parties or activities different from those alleged here, and held the balance of 573 pages for release to the plaintiffs. In an opinion filed November 2, 1973, Judge Newman denied defendants' motion for a stay of the release of the minutes but in order to preserve the status quo so that a ruling could be obtained from this court he delayed release of the transcripts until November 12, 1973. On November 6, 1973, United States Steel Corporation filed a notice of appeal from Judge Newman's November 2 ruling. On November 12, 1973, we directed that both appeals be heard together and stayed release of the transcripts pending our decision of the appeals.

### Discussion

█ At the outset we face the question of whether either of the two orders, both of which deal with pretrial discovery, is appealable. Normally

> "[o]rders dealing with discovery have been held interlocutory and therefore unappealable, when issued in the same jurisdiction as that of the main proceeding, e. g., Horvath v. Letay, 343 F.2d 463 (2 Cir. 1965); Cimijotti v. Paulsen, 323 F.2d 716 (8 Cir. 1963); Hoffa v. United States, 309 F.2d 680 (5 Cir.), cert. denied, 371 U. S. 878, 83 S.Ct. 147, 9 L.Ed.2d 115 (1962), or when, though issued in outside jurisdictions, they compelled disclosures, see, for example, Cobbledick v. United States, 309 U.S. 323, 60 S. Ct. 540, 84 L.Ed. 783 (1940); National Nut Co. of California v. Kelling Nut Co., 134 F.2d 532 (7 Cir. 1943); Korman v. Shull, 310 F.2d 373 (6 Cir. 1962); but also see Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10 Cir), cert. denied, 380 U.S. 964, 85 S. Ct. 1110, 14 L.Ed.2d 155 (1965)." Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 554 (2d Cir. 1967).

Our strong policy against interlocutory appeals is based principally on the view that since review is ultimately available upon appeal from the final judgment in the action, unnecessary intermediate appeals only serve to delay trial and to provide an opportunity for harassment and abuse, burdening us with procedural issues at a time when our dockets are swamped. See American Express Warehousing, Ltd. v. Transamerica Insurance Co., 380 F.2d 277, 280 (2d Cir. 1967); United States v. Fried, 386 F.2d 691 (2d Cir. 1967). Indeed, appeal from Judge Newman's order appears to be foreclosed by our decision in Atlantic City Electric Co. v. A. B. Chance Co., 313 F.2d 431 (2d Cir. 1963), where we applied the foregoing principles to deny both a petition for a writ of mandamus and for leave to appeal under 28 U.S.C. § 1292(b) from an order granting disclosure of grand jury minutes for use in a civil antitrust case, absent a showing that "there has been a manifest abuse of discretion." 313 F.2d at 434.[3]

Appellants virtually concede that, if their sole appeal were from Judge Newman's order, dismissal would be mandated. However, relying principally upon In re Biaggi, 478 F.2d 489 (2d Cir. 1973); Gibson v. United States, 131 U. S.App.D.C. 143, 403 F.2d 166 (1968), and United States v. Byoir, 147 F.2d 336 (5th Cir. 1945), they contend that since

---

3. Undoubtedly because of *A. B. Chance Co.*, *supra*, United States Steel Corporation has not sought either a writ of mandamus or for leave to appeal from Judge Newman's order pursuant to 28 U.S.C. § 1292(b).

Judge Wyatt's order represented a complete disposition of the only proceeding pending in the Southern District of New York it is final and appealable, and that since Judge Newman's November 2d decision hinged upon Judge Wyatt's order the two are inextricably intertwined and must be considered together.

Although we agree that both orders are "of a piece" we fail to perceive how this helps appellants or renders the orders any more final or appealable than if both had been entered in the same district court. Passing over the argument that, Judge Wyatt's order having been carried out, an appeal from it may at this stage be moot,[4] nothing about that order precludes an ultimate review of the basic underlying issue of whether discovery may be had of the grand jury testimony for use in this civil case. We are not here dealing with an order of a different district court *denying access to the transcripts*, which conceivably could be directly or separately reviewable as a final order because it could not be reviewed in the case pending in the Connecticut district, see, e. g., Gibson v. United States, *supra*; Republic Gear Co. v. Borg-Warner Corp., *supra*, but with an order which, no matter how it was labelled, was in effect ancillary to the main proceeding in the Connecticut district. See, e. g., National Nut Co. of California v. Kelling Nut Company, 134 F.2d 532 (7th Cir. 1943) (discovery order of Northern District of Illinois issued pursuant to order granted in main proceeding in Southern District of California held to be ancillary and not appealable to the Seventh Circuit). Although appellants, in opposing Judge Newman's request, sought to induce Judge Wyatt to review the merits and thus overrule Judge Newman's June 12, 1973, decision, Judge Wyatt refused the invitation, stating:

"I feel that I ought to honor Judge Newman's request because he has the civil action pending before him. He

has gone into the matter and especially he having the responsibility for the trial of the civil action and having made his determination and having sent this to me, I do not think I ought to review."

Thus Judge Wyatt's order was in effect merely a mechanical step taken as a matter of "judicial administration" for the purpose of enabling the Connecticut district court to have the essential evidence before it so that the substantive issue could be resolved by it, subject to ultimate review upon entry of a final judgment on the merits in that proceeding. To permit a review of Judge Wyatt's order without going into the merits of Judge Newman's ruling would be meaningless, and to permit a review at this stage of the latter decision would concededly erode our strong policy against review of interlocutory orders, which we applied with respect to the very same issue in *A. B. Chance Co.,* *supra.*

In re Biaggi, *supra,* cited by appellants, is clearly distinguishable for the reason that there the issue of whether the grand jury testimony should be released represented the only proceeding pending before any court and unless review were granted there could never have been any review of that issue. Here, in contrast, the propriety of releasing the grand jury transcripts may still be reviewed upon an appeal from the final judgment entered in the Connecticut district.

■ Although the appeals must be dismissed we recognize that if Judge Newman's ruling ultimately should turn out to have been erroneous, considerable harm could result not only to appellants but also to the public interest in maintaining the confidentiality of grand jury proceedings. The minutes, once disclosed, could not be restored to a state of secrecy. While Judge Newman has given careful and conscientious thought to

---

4. Appellants argue that Judge Wyatt's order is not moot because, should it be reversed, Judge Newman would be obligated to return

the grand jury transcripts to the Southern District of New York without making them available to plaintiffs for discovery.

the issue before him and we do not at this stage suggest that there has been a manifest abuse of discretion, we take this occasion, as was recently done in Stans and Mitchell v. Gagliardi, 485 F. 2d 1290 (2d Cir. 1973), to suggest that he reconsider his ruling in the light of certain facts brought to this court's attention upon oral argument, which may not have been known to or considered by him.

It is undisputed that the grand jury transcripts, even assuming they contained evidence relevant to the issues to be tried, would be inadmissible at trial, since the witnesses are dead and of course no opportunity for cross-examination could have existed before the grand jury. At best, therefore, the minutes might be useful as providing "leads" to plaintiffs' counsel that conceivably could direct them to competent evidence. However, plaintiffs delayed approximately four (4) years after the termination of the criminal proceeding before bringing the present civil suit and lingered still another five (5) years before seeking release of the grand jury minutes. Upon oral argument it appeared that not only were some of the seven witnesses (now deceased) available for deposing during part of that nine-year period but that plaintiffs have not yet exhausted the deposing of other live and available witnesses who might provide the "leads" plaintiffs seek to gain from disclosure of the grand jury testimony of the deceased officials.

Having in mind that disclosure of grand jury proceedings may substantially inhibit the deliberations of other grand juries and the willingness of witnesses to appear and testify freely in the future, we would not want our dismissal of these appeals to be construed as approval of the standard of "slight need" formulated by the district court. Perhaps some relaxation of the "particularized need" test might be justified under other circumstances. See, e. g., United States Industries, Inc. v. United States District Court, 345 F.2d 18, 21 (9th Cir. 1965). However, it seems to us that where plaintiffs' predicament is to such a large extent of their own making and the use to which they could put the transcripts so speculative, greater weight should be given to the fact that, while some of the reasons for maintaining secrecy no longer exist in this case, other traditional reasons survive. As the Supreme Court stated in United States v. Procter & Gamble Co., *supra*, for instance, the institution of the grand jury "might suffer if those testifying today knew that . . . their testimony would be lifted tomorrow," 356 U. S. at 682, 78 S.Ct. 986. For the most part the decisions relied upon by the district court in support of its new "slight need" standard reveal the existence of more specific, forceful and persuasive exigencies than those shown here, which were described by the courts in terms of compelling or particularized need. For instance, disclosure has been permitted to enable counsel to perform the vital function of cross-examining a witness who is obligated for other reasons to testify publicly with respect to the same matters which were the subject of his grand jury testimony. See, e. g., United States v. Youngblood, 379 F.2d 365 (2d Cir. 1967); Atlantic City Electrical Company v. A. B. Chance Company, *supra*; City of Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 486 (E.D.Pa.1962); Illinois v. Harper & Row Publishers, Inc., 50 F.R.D. 37 (N. D.Ill.1969). No such situation exists here. Nor do these authorities support the proposition that grand jury transcripts should be released to permit *general discovery* in a civil case, as distinguished from satisfying the compelling need for impeachment or refreshment of a witness' recollection, without any showing that other possible sources have been exhausted or that the transcripts, if disclosed, would not be publicized.

Thus, while we are powerless to act at this stage, we are hopeful that the able district judge will reconsider his ruling in light of the thoughts here expressed.

LUMBARD, Circuit Judge (dissenting):

I dissent.

The majority agrees that it was improper for Judge Newman to order the release of secret grand jury testimony here simply on the showing of a "slight need" for such testimony by the plaintiffs. While the "particularized need" test of Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S. Ct. 1237, 3 L.Ed.2d 1323 (1959) and United States v. Procter & Gamble Co., 356 U.S. 677, 682–683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), has been eroded to some extent, no previous decision of this court has endorsed a standard which would permit the breach of grand jury secrecy merely for general discovery purposes. Such a lenient standard would seriously jeopardize the effective functioning of grand juries. Ready access to grand jury minutes would likely have the effect in the future of substantially inhibiting the deliberations of the grand jury, and, perhaps more significant, the willingness of witnesses to appear and testify freely. With these consequences in mind, this court has required a showing of exigent circumstances before overriding the strong policy in favor of grand jury confidentiality. See, e. g., United States v. Youngblood, 379 F.2d 365, 367 (2d Cir. 1967), Atlantic City Electrical Co. v. A. B. Chance Co., 313 F.2d 431, 434 (2d Cir. 1963).

The plaintiffs have failed to point to such exigent circumstances here in support of disclosure. They seek to use secret grand jury testimony to obtain "leads" to competent evidence that could then be used in this civil suit against the defendants. No showing, however, has been made that the usual channels of discovery have proved fruitless or have even been diligently pursued. As the majority notes, plaintiffs have yet to exhaust "the deposing of other live and available witnesses who might provide the 'leads' plaintiffs seek to gain from

disclosure of the grand jury testimony of the deceased officials." Moreover, any difficulties plaintiffs may be encountering in obtaining evidence are largely traceable to their own lackadaisical prosecution of this civil suit. Plaintiffs procrastinated four years after the termination of the criminal action before initiating this civil proceeding. Even then, they waited another five years and seven months before requesting the release of grand jury minutes. During this period, many of the witnesses, whose grand jury testimony plaintiffs now seek to have released, were available for deposing.

Despite the absence of any justification for overriding the principle of grand jury secrecy under the circumstances of this case, the majority nevertheless argues that it is powerless to review at the present time the orders of Judges Newman and Wyatt. They assert that these orders are interlocutory in nature and therefore nonappealable. 28 U.S.C. §§ 1291, 1292. Yet, only last term, in In re Biaggi, 478 F.2d 489 (2d Cir. 1973), this court, confronted with a similar appeal from an order directing release of grand jury minutes, concluded that the order was "obviously appealable," id. at 491, and went on to decide the question of the release of grand jury testimony on the merits.

The majority attempts to distinguish *Biaggi* by noting that in that case, "unless review were granted there could never have been any review of [the disclosure] issue." In contrast, it is blithely suggested that the orders here "may still be reviewed upon an appeal entered in the Connecticut district." While this may be true in a technical sense, the release of the grand jury minutes here will, in practical terms, foreclose any later, meaningful appeal. A subsequent determination by this court that grand jury secrecy should have been preserved will not undo the damage to the principle of secrecy which will have been done by the dissemination of the testimony.

Additionally, should this court conclude that disclosure was unwarranted, as would almost certainly be the case, it would face the hopeless task of determining the extent to which the leads from the grand jury testimony facilitated plaintiffs' investigation and the production of evidence, and the degree to which this tainted evidence was responsible for the judgment in the district court on the merits of this antitrust suit. It is contrary to all the practical considerations, which must always play an important part in the judicial process, to suggest seriously that any court would ever reverse a judgment, years later and after lengthy proceedings, because grand jury minutes had been made available for discovery purpose.

These considerations should guide us in determining whether the orders here under review are presently appealable. The Supreme Court has made clear, Gillespie v. United States Steel, 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964), that "a decision 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case" and that "the requirement of finality is to be given a 'practical rather than a technical construction.' " *See also* Cohen v. Beneficial Ind. Loan Corp., 337 U.S. 541, 545, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In practical terms, nothing could be more final than the order requiring the release of the grand jury minutes here. Once disclosure takes place, there will be no way to restore the secrecy of the testimony, should it later be decided that there was no basis for its release. Preserving the secrecy of grand jury minutes, in accordance with Rule 6, Fed.R.Cr.P., is an important concern of the courts, and to the end that the administration of criminal justice is effectively and properly

conducted, the courts of appeals should not hesitate to exercise their supervisory powers when a situation jeopardizing secrecy of grand jury minutes is brought to their attention.

Atlantic City Elec. Co. v. A. B. Chance Co., 313 F.2d 431 (2d Cir. 1963), on which the majority so heavily relies, involved a quite different situation than that presented here. In *A. B. Chance Co.*, the grand jury testimony was to be released pursuant to a National Deposition Program designed to expedite, but not circumvent, discovery in the many electrical antitrust cases then pending. *Id.* at 433. Moreover, the trial judge had concluded "that many facts were disclosed in the grand jury testimony 'of vital importance to essential issues in the . . . litigation which were not recalled or were denied by deponent in his deposition testimony,' and that a 'compelling need for disclosure . . . has been shown and that the ends of justice clearly require it.' " *Id.* at 434. The situation here is quite different as it is conceded that the minutes cannot be used as evidence in any way.

Moreover, the court in *A. B. Chance* was careful to distinguish the case before it from one involving "a manifest abuse of discretion." In the latter situation, the court concluded, appellate review would be permissible. Since we all agree that there is no authority whatever supporting the trial court's decision to release grand jury testimony, this case suggests the possibility of precisely the sort of manifest abuse of discretion permitting immediate review. Accordingly, I would allow the appeal from the orders of Judges Newman and Wyatt, reverse the orders to the extent that they permit any disclosure, and direct the return of the minutes to the Southern District of New York.