**SUN DUN INC. OF WASHINGTON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. A. No. 91–112–N.**

United States District Court, E.D. Virginia, Norfolk Division.

June 3, 1991.

Russel L. Beers, Whiteford, Taylor & Preston, Washington, D.C., for Sun Dun of Washington.

Alan M. Salsbury, Walter E. Hoffman, Norfolk, Va., and David C. Jordan, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for the U.S.

Robert S. Bennett, C. Benjamin Crisman, Jr., William J. Guzick and Gary A. Mac-

Donald, Washington, D.C., for Gen. Cinema Beverages.

Olivia C. Baker and F. Joseph Warin, Kutak Rock & Campbell, Washington, D.C., for Claude Nielsen and Norman Hayter.

Kenneth H. Lambert, Jr., Williams, Kelly & Greer, P.C., Norfolk, Va., and Gerald A. Connell, Lee H. Simowitz, Peter B. Kenney, Jr., Jenifer M. Brown and Joseph Muoio, Baker & Hostetler, Washington, D.C., for Mid–Atlantic Coca–Cola Bottling Co.

F. Thomas Tuttle and Gary M. Cohen, Blumenfeld & Cohen, Washington, D.C., for Paul Polcen.

Robert J. Shaughnessy, F. Whitten Peters, Williams & Connolly, Washington, D.C., and Fred A. Freund and Richard M. Steuer, Kaye, Scholar, Fierman, Hays & Handler, New York City, for Pepsico, Inc.

Hunter W. Sims, Jr., Kaufman & Canoles, Norfolk, Va. and Richard J. Wertheimer, Kenneth A. Letzler, David S. Eggert and Arnold & Porter, Washington, D.C., for Edward L. Wynne.

Charles A. Trainum, Jr. and John F. Hyland, Jr., Trainum, Snowdon, Hyland & Deane, P.C., Washington, D.C., for nonparty John Doe witness.

## ORDER

DOUMAR, District Judge.

Sun Dun Inc. of Washington, a company engaged in the distribution of soft drinks in the Washington, D.C. metropolitan area, filed this petition pursuant to Fed.R.Crim. Proc. 6(e)(3)(C)(i) for disclosure of certain transcripts of grand jury testimony from the grand jury investigation of the soft drink industry in the Mid–Atlantic region. This petition arises from a civil action filed in another district, *Sun Dun Inc. of Washington v. The Coca–Cola Company et al.,* 740 F.Supp. 381 (D.Md.1990). Petitioner Sun Dun Inc. seeks disclosure of testimony before a grand jury supervised by this Court, which investigated soft drink pricing practices in the mid-Atlantic region.

By order of February 6, 1991 this Court ordered Sun Dun to serve a copy of its petition on all witnesses whose testimony it sought. The Court provided those witnesses, as well as the parties to the Maryland civil litigation, an opportunity to file statements of opposition to disclosure. A hearing was held on the matter on May 6, 1991, and the matter is now ready for decision.

For the reasons stated below, the petition is DENIED.

## RULE 6(e)

Since at least the 17th century, grand jury proceedings have traditionally been held in secret. 2 S. Beale & W. Bryson, *Grand Jury Law & Practice* § 7.02 (1986). The reasons for this secrecy are several. First, prospective witnesses would be hesitant to come forward voluntarily if they knew that those against whom they testify would be aware of that testimony. Second, witnesses would be less likely to testify fully and frankly if they were open to retribution or inducement. Third, those facing indictment might flee, or might attempt to influence grand jurors. Fourth, those accused but exonerated by the grand jury are not held up to public ridicule. Fifth, secrecy encourages the grand jurors to engage in uninhibited investigation and deliberation by barring disclosure of their votes and comments. *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 219, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979); *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 405, 79 S.Ct. 1237, 1243–44, 3 L.Ed.2d 1323 (Brennan, J., dissenting) (1959); *In re Grand Jury Proceedings,* 800 F.2d 1293, 1300 (4th Cir. 1986); *Bast v. United States,* 542 F.2d 893 (4th Cir.1976). Although a number of these considerations dissipate upon conclusion of the grand jury's investigation, a court in considering a motion to disclose should consider "the possible effect upon the functioning of future grand juries." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. at 222, 99 S.Ct. at 1674; *In re Grand Jury Proceedings,* 800 F.2d at 1300.

Accordingly, disclosure of what transpires before the grand jury is generally prohibited, with certain exceptions delin-

eated in Rule 6 of the Rules of Criminal Procedure. Specifically, for the purposes of this petition, Rule 6(e)(3)(C)(i) provides that disclosure otherwise prohibited may be made when so directed by a court preliminarily to or in connection with a judicial proceeding. The general framework for determining whether to make such a disclosure is relatively simple. The party seeking disclosure must make "a strong showing of particularized need for grand jury material before any disclosure will be permitted." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983). That is, the party must prove that without access to the grand jury materials, "a defense would be greatly prejudiced" or "an injustice would be done." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). Once "particularized need" is demonstrated, the petitioner must show that the need for disclosure outweighs the need for continued secrecy, and that the request is structured to cover only the material so needed. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. at 222, 99 S.Ct. at 1674; *In re Grand Jury Proceedings*, 800 F.2d at 1298.

Although the general standard is easily stated, the determination of whether disclosure is appropriate is a very fact-specific. The standard "is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." *United States v. Sells Engineering Co.*, 463 U.S. at 445, 103 S.Ct. at 3149. The Court therefore turns to a consideration of the circumstances of this case.

## BACKGROUND

In 1986, a federal grand jury sitting in Norfolk, Virginia, investigated the conduct of Mid–Atlantic Coca–Cola Bottling Compa-

ny, Inc. ("Mid–Atlantic") and Allegheny Pepsi Bottling Company ("Allegheny"), which distribute soft drinks in the Norfolk and Richmond, Virginia, and Baltimore, Maryland, market areas. During the course of that investigation, the grand jury received testimony concerning market conduct of Mid–Atlantic and General Cinema Beverages of Washington, D.C., Inc. ("General Cinema"), a Pepsi bottler, in the Washington, D.C. metropolitan area.[1] Various employees of both companies testified.

As a result of this investigation, General Cinema and Mid–Atlantic were both named in a criminal information charging antitrust violations in the D.C. area. Both companies pled guilty to agreeing to adhere to prices published in promotional letters between October 1984 and August 1985. General Cinema also pled guilty to agreeing to a wholesale price increase for twelve-ounce cans during July and August of 1985.[2]

The grand jury's investigation has been completed.

A class of direct purchasers of soft drinks in the D.C. area subsequently filed civil antitrust damages suits in the United States District Court for the District of Columbia. The class eventually reached a proposed settlement with the defendants. Before approving the settlement, Judge Sporkin directed the plaintiffs to seek the release of the testimony of witnesses before the Norfolk grand jury. The plaintiffs' request included requests for the testimony of Edward Wynns, Norman Hayter, and Richard Romanelli, whose testimony the present petitioner also seeks. This Court, weighing the plaintiffs' inability to show that the grand jury testimony might contain information that would suggest the proposed settlement was unjust, against the reasons for secrecy and the fact that the government's investigation had not yet

---

1. Allegheny distributes Pepsi products in the Norfolk, Richmond and Baltimore areas, while General Cinema, an unrelated corporation, distributes Pepsi products in the D.C. area.

2. The grand jury's investigation also resulted in several other criminal cases tried in this Court, including: *United States v. Mid–Atlantic Coca-*

*Cola Bottling Co.*, CR 87–122–N; *United States v. Allegheny Bottling Co., James J. Karford, Morton M. Lapides, Odis R. Allen*, CR 87–123–N, 1988 WL 107060; *United States v. James P. Sheridan*, CR 87–79–N; and *United States v. Armand Gravely*, CR 86–102–N.

been completed, found the petitioners' demonstration of particularized need was insufficient to compel disclosure. *In the Matter of Grand Jury Materials from Investigation of Soft Drink Industry,* Misc. No. _____ (E.D.Va. Jan. 6, 1989). Judge Sporkin eventually approved the settlement.

Sun Dun, the present petitioner, had been a member of the class in the prior action but opted out after the settlement. Sun Dun has brought its own antitrust action against the Coca–Cola Company, Mid–Atlantic, Pepsico, Inc., and General Cinema. *Sun Dun, Inc. of Washington v. The Coca–Cola Company et al.,* 740 F.Supp. 381.

Sun Dun was incorporated in late 1984, and was fully in business by April 1985. However, Sun Dun did not begin purchasing from General Cinema until February 1986. (The Court has no information as to when Sun Dun began purchasing from Mid–Atlantic.) Sun Dun alleges that Mid–Atlantic and General Cinema agreed to raise or maintain prices to third-party customers, and that they agreed not to deviate from a published third-party price list for sales of certain brands of soft drinks, all in the D.C. metropolitan area. Sun Dun believes that the grand jury testimony would provide evidence of these allegations. Although the grand jury investigated agreements occurring before Sun Dun began purchasing from General Cinema (and perhaps Mid–Atlantic as well), Sun Dun contends that the price-fixing continued after the termination of the grand jury investigation, and that it was injured by the companies' behavior and resulting lack of competition when it first entered the market, even though it was not actually purchasing from General Cinema and Mid–Atlantic at that time.

Sun Dun's suit was filed August 24, 1988. A motion to dismiss the complaint was denied on June 25, 1990. Sun Dun did not file notices of depositions until December 1990, and did not begin deposing witnesses until January 1991. Thus Sun Dun did not attempt to depose any of the witnesses whose grand jury testimony it now seeks until almost two and one-half years after suit was filed, and six months after the motion to dismiss was denied.

Sun Dun submitted this petition on February 1, 1991. The petition sought disclosure of the grand jury testimony of the following persons:

Richard Romanelli
Paul Polcen
Norman Hayter
Claude Nielsen
Edward Wynns
Jim McClain
Gary Scharippa
Maurice Schafer

Polcen worked for Mid–Atlantic, where he reported to Edward Wynns. Claude Nielsen and Maurice Schafer worked at General Cinema, where they reported to Romanelli, who reported to Hayter, who in turn reported to Schirippa.

Sun Dun originally asked for disclosure of the entire grand jury transcripts. At oral argument Sun Dun narrowed its request for disclosure of those portions of the testimony, if any, which contain admissions concerning communications or agreements between Mid–Atlantic and General Cinema as to third-party pricing of twelve-ounce cans of soft drinks. Sun Dun has argued throughout that in antitrust cases, often the only evidence of price-fixing agreements is the testimony of company officials, and that no other evidence of its allegations is available.

At the time of its petition, Sun Dun had deposed only Paul Polcen, who had asserted his Fifth Amendment privileges and refused to answer questions. The request for disclosure of the testimony of the other persons (except for Hayter and McClain, who are deceased) was based on the speculation that they, too, would assert the Fifth Amendment.

At the time of the hearing on this matter, Sun Dun had additionally deposed only Romanelli and Nielsen. Romanelli asserted the Fifth Amendment in response to a few questions. Nielsen did not assert it at all. Sun Dun had cancelled the depositions of Schirippa and Wynns, having determined that their testimony would be cumulative.

At the hearing the Court learned that Jim McClain, Maurice Schafer and Gary Schirippa never testified before the grand jury.

The Court recites these facts because they indicate that Sun Dun's primary purpose in seeking disclosure of grand jury testimony is to find a short-cut through the normal processes of discovery. Grand jury testimony should not be used "as a panacea for improper, inadequate and untimely discovery." *Lucas v. Turner*, 725 F.2d 1095, 1106 (7th Cir.1984), *quoted in In re Lynde*, 922 F.2d 1448, 1454 (10th Cir.1991).

The Court also observes that Sun Dun filed this petition before even ascertaining which witnesses actually testified before the grand jury, and before attempting to depose any of the witnesses besides Polcen and the two who were deceased. Before attempting to depose a witness, a party has no way of knowing whether that person will plead the Fifth Amendment, whether he will demonstrate a need for refreshment of memory, or whether he will make statements reasonably suspected to be false and thus impeachable by prior testimony. Without this bare minimum of information to support an assertion of "particularized need" for grand jury testimony, the Court has no choice but to look askance at this petition.

### "PARTICULARIZED NEED"

"Particularized need" is not demonstrated merely by showing that the desired information is relevant to another judicial proceeding or that it would facilitate discovery. *United States v. Sells Engineering*, 463 U.S. at 445–46, 103 S.Ct. at 3149–50; *United States v. Procter & Gamble*, 356 U.S. at 682, 78 S.Ct. at 986; *In re Grand Jury Proceedings*, 800 F.2d at 1302. If this were the case, then the rule of secrecy would be eviscerated. Instead, the petitioner must show at least "that the grand jury materials contain information which is absolutely necessary, rather than simply beneficial to their ... action, and that the information contained therein could not have been obtained through normal discovery channels." *Lucas v. Turn-*

*er*, 725 F.2d 1095, 1102 (7th Cir.1983). *See also In re Grand Jury Disclosure*, 550 F.Supp. 1171, 1183–84 (E.D.Va.1982) (petitioner must show that the requested materials are "not otherwise available").

This Court has imposed a heavy burden on petitioners seeking disclosure of grand jury materials. In *In re Grand Jury Disclosure, supra,* Judge Warriner wrote:

Indeed, it cannot properly be said that the assertion is that a possible injustice will occur in another judicial proceeding. Petitioner, in truth, asserts that without the secret grand jury documents there will be no other judicial proceeding, and, hence, an injustice will result. This is not what is contemplated by Rule 6(e). The "compelling and particular need" requirement demands more than the mere showing that the secret documents are needed to ensure the return of an indictment. Otherwise, petitioner's argument would be true in every like case, and Rule 6(e) secrecy would be a fiction.

550 F.Supp. at 1183.

Courts have held that a particularized need is shown by the need to impeach a witness's trial testimony or to refresh a witness' recollection. *See, e.g., United States v. Procter & Gamble*, 356 U.S. at 683, 78 S.Ct. at 986–87. Such a showing is in fact the "typical showing of particularized need." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. at 222 n. 12, 99 S.Ct. at 1674 n. 12. However, a party seeking disclosure may not simply speculate that witnesses' memories may have faded, or that they may give false or misleading testimony. Again, if such speculation were sufficient ground for disclosure of grand jury testimony, the rule of secrecy would be eviscerated.

Courts have also held that disclosure was appropriate when witnesses have invoked the Fifth Amendment in response to questions at deposition. *In re Corrugated Container Antitrust Litigation*, 687 F.2d 52, 56–57 (5th Cir.1982); *In re Disclosure of Grand Jury Transcripts*, 309 F.Supp. 1050, 1053 (S.D.Ohio 1970). In such circumstances, however, the petitioner has been required to lay a predicate for release

of the grand jury materials by first moving to compel the testimony of those witnesses asserting the privilege. *In re Corrugated Antitrust Litigation*, 687 F.2d at 56; *Grumman Aerospace Corp. v. Titanium Metals Corp.*, 554 F.Supp. 771, 777 (E.D.N.Y.1982). To the Court's knowledge, Sun Dun has not made such a motion in the Maryland court.

█ With these general principles established, the Court considers whether Sun Dun has demonstrated particularized need.

*1. Jim McClain, Maurice Schafer, Gary Schirippa*

These witnesses did not testify before the grand jury. The issue of particularized need is obviously moot.

*2. Edward Wynns*

Edward Wynns was a vice-president and sales manager for Mid–Atlantic. He was prosecuted by the United States and entered a guilty plea.

Sun Dun has not attempted to depose Edward Wynns, and therefore cannot contend that the information it seeks is not otherwise available. Nor can Sun Dun offer anything more than its own speculation that Wynns might invoke his Fifth Amendment rights, or offer false testimony at trial, or demonstrate a lapse in memory. Sun Dun has failed to show particularized need for his grand jury testimony.

*3. Claude Nielsen*

Sun Dun deposed Nielsen. At deposition, Nielsen answered all questions and did not assert a Fifth Amendment privilege. Sun Dun stated that it wanted Nielsen's grand jury testimony in order to cross-examine him. However, as noted above, this need could be asserted in any case, and is not by any means "particularized."

*4. Norman Hayter*

Hayter passed away on January 1. Hayter was General Cinema's manager for the D.C. area, and had responsibility for third-party pricing decisions which are the subject of the Maryland litigation. Hayter had objected to the previous petition for release of his grand jury testimony. In December 1990 Sun Dun's president contacted Hayter and asked him to consent to an informal interview with Sun Dun's counsel. Hayter declined.

The fact that a witness is deceased does not of itself establish a particularized need for his testimony. *In re Lynde*, 922 F.2d 1448 (10th Cir.1991); *Baker v. United States Steel Corp.*, 492 F.2d 1074 (2d Cir. 1974). A party may not use a deceased witness's grand jury testimony as a substitute for general discovery. *In re Lynde*, 922 F.2d at 1453–54. The Court feels Sun Dun has lackadaisically prosecuted its case and could have deposed Mr. Hayter, who was 72 at the time of death, at any time during the two and one-half years since the suit was filed in August 1988. Some courts have indicated that a party's lack of diligence in discovery is a factor against them in determining whether to release grand jury testimony, see *In re Lynde*, 922 F.2d at 1454; *Lucas v. Turner*, 725 F.2d 1095, 1106 (7th Cir.1984). As a general rule, however, the cases do not reveal a due diligence component to the particularized need standard which must be satisfied. *But see Baker v. United States Steel*, 492 F.2d at 1079 ("where plaintiffs' predicament is to such a large extent of their own making and the use to which they could put the transcripts so speculative, greater weight should be given" to the traditional reasons for secrecy).

Nevertheless, Sun Dun has not made a sufficient showing that the information it seeks to obtain from Mr. Hayter's testimony is not otherwise available. Claude Nielsen, Maurice Schafer Richard Romanelli, and Gary Schirippa were all officials or employees of General Cinema. Sun Dun has deposed Romanelli (whose testimony is discussed below) and Nielsen, but has chosen not to depose Schafer or Schirippa. Without some showing, beyond its speculation, that Mr. Hayter's grand jury testimony would disclose information not available from these other witnesses, Sun Dun has failed to establish particularized need for the disclosure of Hayter's grand jury testimony.

**5.  Paul Polcen and Richard Romanelli**

Polcen was an employee of Mid–Atlantic, and apparently a subordinate to Edward Wynns.  Sun Dun contends that Polcen was in charge of third-party sales in the D.C. area, although counsel for Polcen stated that he had no pricing authority.  At his deposition on January 22, 199, Polcen asserted his Fifth Amendment rights in response to all questions.

Richard Romanelli was vice-president and general manager of General Cinema, and reported to Norman Hayter.  At his February 25, 1991 deposition, Romanelli answered all questions concerning Sun Dun specifically, but invoked the Fifth Amendment in response to questions concerning agreement between General Cinema and Mid–Atlantic with respect to third-party prices in general.  Sun Dun also contends that Romanelli exhibited memory loss as to price increases, but did not attempt other means of refreshing his memory, nor did it request admissions as to the increases it believes occurred.

The Court repeats the principles it stated above when considering the testimony of Norman Hayter.  Without some showing, beyond mere speculation, that the grand jury testimony of either Polcen or Romanelli would disclose information not available from other witnesses, Sun Dun has failed to establish particularized need for the disclosure of their testimony.  In the case of Polcen, Sun Dun has opted not to depose his superior, Edward Wynns, who previously pled guilty to antitrust charges.  In the case of Romanelli, Sun Dun has deposed Claude Nielsen but has not deposed Maurice Schafer or Gary Schirippa, all employees of General Cinema.

Furthermore, Sun Dun has not moved to compel the testimony of either Polcen or Romanelli.  This Court is not in a position to judge the validity of their Fifth Amendment assertions.  The Court joins other courts in holding that a motion to compel is a necessary predicate to an assertion of particularized need for grand jury testimony of witnesses who invoke the Fifth Amendment in other judicial proceedings. *In re Corrugated Container Antitrust Litigation,* 687 F.2d 52, 56–57 (5th Cir. 1982); *Grumman Aerospace Corp. v. Titanium Metals Corp.,* 554 F.Supp. 771, 777 (E.D.N.Y.1982).

### NEED FOR SECRECY

Although the Court determines Sun Dun has not shown particularized need for disclosure of the grand jury testimony of any of the witnesses, the Court feels it necessary to express some thoughts on the continuing need for secrecy of the grand jury proceedings.

The Court recognizes that many of the reasons for grand jury secrecy abate once the grand jury has completed its investigation. *In re Grand Jury Proceedings,* 800 F.2d 1293, 1300–01 (4th Cir.1986).  After the investigation, there is no risk of tampering with witnesses or grand jurors, and no risk of flight of targets.  However, there may be a continued fear of retaliation against witnesses (although none has been suggested in this case), or a continued risk of holding up to public obloquy those who were implicated but later exonerated.

More importantly, the Court must consider the effect on future grand juries.  The Court is concerned that the witnesses who testified before the grand jury in this case did so under a grant of immunity.  Were the testimony of these witnesses made public, it is conceivable they might be exposed to civil penalties far in excess of the criminal punishment that might have been exacted from them.  This exposure would result from immunized testimony given under a grant of immunity.

It is true that the Constitution does not require that the grant of immunity bar the use of immunized testimony in noncriminal proceedings. *United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980).

> The privilege guards only against *incrimination,* not against all adverse effects of compelled testimony.  Accordingly, a witness cannot invoke the privilege on the ground that his or her testimony could be used in a civil proceeding.  Because the privilege would not shelter the witness from compulsion on the basis

of possible civil consequences, the immunity grant that displaces the privilege does not protect the witness from the use of compelled testimony for civil purposes.

2 S. Beale & W. Bryson *Grand Jury Law & Practice* § 9:13 (1986). *United States v. Cappetto*, 502 F.2d 1351 (7th Cir.1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975). However, future grand jury witnesses, knowing that their immunized testimony may later be used to their detriment, notwithstanding the assurances of secrecy provided by the government, may not give full and frank testimony even under a grant of immunity. That concern is heightened when, as in this case, the United States does not object to the disclosure of grand jury testimony. When the government abandons its witnesses in this way—and to the extent that the government has misrepresented to potential witnesses the guarantee of secrecy— the Court must take the responsibility of protecting the rights of grand jury witnesses.

■ The Court has not found a case which specifically considered the immunity aspect. This Court feels it an important consideration. The Court believes that when a party seeks disclosure of immunized testimony, even when the grand jury's investigation has terminated, the party still must make a compelling showing of particularized need before disclosure will be permitted.

## CONCLUSION

Because the Court finds that Sun Dun has not shown a particularized need for any grand jury testimony, its petition for disclosure of such testimony is DENIED.

The affidavit and brief submitted out of time on behalf of the estate of Norman Hayter are ORDERED FILED.

IT IS SO ORDERED.