OPINION OF THE COURT
John Carey, J.
The law firm of Bryan, Cave, McPheeters & McRoberts, *784 hereinafter referred to as the Law Firm, asks the court in this proceeding to seal designated parts of the application on the basis of which was issued a search warrant that was executed at the New York City office of the Law Firm on October 3, 1989. The Law Firm’s identity was revealed in a New York Times article on October 20. The article did not name certain lawyers at the Law Firm who were mentioned in the application nor did it disclose the legal reasoning embodied in the application. The parts of the application which reflect the reasoning and lawyers’ names were: designated by the Law Firm’s counsel at oral argument on October 20, 1989. As set forth below, the parts reflecting reasoning will not be sealed while the lawyers’ names will be.
BACKGROUND
Sherman Krisher pleaded guilty to third degree grand larceny of drawings from the Museum of Cartoon Art in the Town of Rye, where he had been a curator. At his sentencing on October 6, 1989, 44 pieces of cartoon art found in the search at the Law Firm’s office were produced and stipulated to have been among those stolen. Krisher was given credit accordingly towards the restitution that formed part of his sentence.
Through its counsel, the Law Firm stated the following to this court in an affidavit of October 13th (referring to the Law Firm as "the John Doe Partnership”) submitted in support of its request for sealing:*
"3. Following the theft, some of the art work was sold to a client of the John Doe Partnership. I am advised that the firm’s client, an art dealer, was unaware that the art work he purchased and later resold was stolen property.
"4. A member of the John Doe Partnership was advised that the thief was seeking to restore the stolen art work to the museum and to reimburse unwitting purchasers for the *785 money they had expended on the property. At the request of the attorney for the thief, this member of the firm helped to arrange a closing which was intended to serve as a means by which the victims of the theft (both the unwitting purchasers and the museum) would be made whole for their losses. The closing was scheduled to take place at the firm’s offices on October 3, 1989.”
In paragraph 8 of his affidavit, counsel referred to "the innocent role which the Partnership played.”
The same counsel’s memorandum of law in support of sealing also stated that, when the search warrant was executed at the Law Firm’s office: "The subject materials had been brought to the John Doe Partnership’s offices in order to facilitate the return of the drawings to the museum from which they had been stolen and to reimburse the unwitting purchasers to whom the drawings had been sold. A closing was scheduled to take place at the John Doe Partnership’s offices in New York City. The offices of the John Doe Partnership were designated as the site for this closing because the partnership represented an art dealer who was in possession of the art work at the time of the planned exchange. Alerted of the planned closing, the Westchester County District Attorney’s office obtained a search warrant, conducted the search, and seized the materials.” The memorandum went on to refer to the Law Firm as "an innocent third party.” While counsel was not so clear in writing as at oral argument that the Law Firm was to collect money for the stolen art at the "closing,” the facts publicly stated by the Law Firm as set forth above are not substantially at odds with what appears in the designated parts of the application. Where they differ is in the inferences drawn from those facts.
Having thus made public its own explanation for possessing stolen property and for making it the subject of a "closing,” the Law Firm seeks to seal not only the names of certain of its lawyers but also the legal reasoning relied upon for issuance of the search warrant. The justification given for sealing is potential damage to the reputations of the Law Firm and its named lawyers.
FINDINGS OF FACT
(1) The interest of the Law Firm in not having its explanations publicly compared with the legal reasoning relied upon for issuance of the search warrant is outweighed by the *786 public’s interest in knowing whether the search warrant process was appropriately utilized.
(2) The interest of individual lawyers in the Law Firm in not being publicly singled out exceeds any interest the public might have in identifying them as directly involved persons within the Law Firm.
(3) Deletion of the individuals’ names from the application and from court transcripts is the narrowest tailoring possible consistent with their protection.
CONCLUSIONS OF LAW

The Legal Reasoning

Counsel for both the Law Firm and Gannett Newspapers agreed at oral argument on October 20, 1989, that the court has inherent power to seal the designated parts of the search warrant application. They differed on whether a weighing process required by either a constitutional or a common-law right of access would preclude sealing in the present circumstances.
A threshold question is whether any weighing must take place prior to not sealing as distinct from situations where sealing is ordered. While access afforded by constitutional or common law cannot be closed off without weighing the competing factors, nonsealing does not impact those rights. Arguably therefore nonsealing is not reviewable. Nonetheless the Seventh Circuit did review a District Court’s decision not to seal, and approved it after performing a weighing process. (Matter of Continental Ill. Sec. Litig., 732 F2d 1302 [7th Cir 1984].)
"Having concluded that the presumption of access applies to the Report, we must balance the public interest underlying that presumption against Continental’s interest in confidentiality. * * *
"While better practice would dictate more specific findings, no case has been cited to us which holds that appellate review is precluded by the failure to accompany a disclosure order with findings.” (732 F2d, supra, at 1313.)
In a footnote, the court made the following observation pertinent hereto: "Because a denial of access may amount to a denial of first amendment rights, it is ¡perhaps more important that findings accompany a denial than a grant of access. Nevertheless, we think findings in all cases are desirable.” *787 (Supra, at 1313, n 17.) This court agrees, and has set forth above its relevant finding.
The Seventh Circuit, in describing the interest favoring disclosure, quoted (supra, at 1314) the Tenth Circuit in Crystal Grower’s Corp. v Dobbins (616 F2d 458, 461 [1980]), concerning " 'the public’s interest in assuring that the courts are fairly run and judges are honest.’ ” Then the Second Circuit’s decision in Joy v North (692 F2d 880, 893 [1982]) was quoted, to the effect that, without public disclosure, " 'confidence in the administration of justice would be severely weakened’ ”. (Supra, at 1314.) The Seventh Circuit warned that, "While sealing of one document in one case may not have a measurable effect on confidence in judicial integrity or on the effective operation of the courts, the effect of a consistent practice of sealing documents could prove damaging.” (732 F2d, supra, at 1314.)
The crucial factors to be weighed here are the interest of the public, including the news media, in the proper functioning of the criminal justice system and the interest of the Law Firm and individuals within it in their good names.
The issuance of search warrants is a significant feature of the criminal justice system which is susceptible to misapplication. Where indictment follows the execution of a search warrant, the propriety of the warrant can be tested by a motion to suppress the evidence seized. If no further proceedings ensue, the issuance of the warrant might be thought unjustified. Where no indictment follows, the public cannot know whether the search warrant was properly issued unless its basis, the application, is open to scrutiny.
The factor weighing against release of the designated parts of the application is that those reflecting legal reasoning involve inferences different from those the Law Firm draws based on substantially similar factual assumptions. The Law Firm has already put forth its own inference. An imbalance would exist if inferences contained in the search warrant application were kept from the public by being sealed. The public might then be led to believe the search warrant process to have been inappropriately utilized, causing loss of confidence in the criminal justice system. The consequent damage to public morale outweighs any harm to the Law Firm in having its inferences compared with what appears in the designated parts of the application.

The Lawyers’ Names

As to the names of individual lawyers, the situation is *788 different. The public interest in the identity of those persons in the Law Firm who acted for it in the transaction is slight. Singling them out, especially in view of the shared responsibility within law firms of partnership form, would damage them to an extent outweighing any interest of the public in their particular identity. No narrower way of protecting them than deleting their names from the application and from court transcripts has been suggested or appears to be feasible.
In the Ninth Circuit, such findings as those just stated would not be required in order to justify sealing the individuals’ names. (Times Mirror Co. v United, States, 873 F2d 1210 [9th Cir 1989].)
"For these reasons, we hold that the First Amendment does not establish a qualified right of access to search warrant proceedings and materials while a preindictment investigation is still ongoing. Our position is reinforced by still another factor, namely the privacy interests of the individuals identified in the warrants and supporting affidavits. The Supreme Court has acknowledged that one of the reasons for maintaining the secrecy of grand jury proceedings is to 'assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.’ Douglas Oil, 441 U.S. at 219, 99 S.Ct. at 1673; see also United States v. Proctor & Gamble Co., 356 U.S. 677, 681-82 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958) (need to protect innocent accused from disclosure of the fact that he has been under investigation). This concern applies with equal force here.” (873 F2d, supra, at 1216.) The Ninth Circuit went on to hold that the common law did not establish a right of access either. In connection with the First Amendment, the court discussed United States v Smith (776 F2d 1104 [3d Cir 1985]), which held that both the Amendment and common law do provide qualified access to a criminal bill of particulars naming unindicted coconspirators. The Third Circuit approved sealing:
"In these circumstances, we have no hesitancy in holding that the trial court had a compelling governmental interest in making sure its own process was not utilized to unnecessarily jeopardize the privacy and reputational interests of the named individuals.
"We further hold that the approach taken by the trial judge was narrowly tailored to serve these compelling interests. * * * The order prohibiting public access was limited solely to the government’s list of co-conspirators; all other aspects of *789 the proceedings remained in the public domain. In addition, as the trial judge made clear, his order did not prevent dissemination of the listed names if it was obtained from any other source.” (776 F2d, supra, at 1114.)
While the Supreme Court of Washington sides with the Ninth Circuit in holding that neither the First Amendment nor common law provides even a qualified right of access to a search warrant affidavit in an unfiled criminal case (Seattle Times Co. v Eberharter, 105 Wash 2d 144, 713 P2d 710 [1986]), the Eighth Circuit is closer to the Third. (In re Search Warrant for Secretarial Area, 855 F2d 569 [8th Cir 1988] [public has qualified First Amendment access to affidavits and other materials supporting applications for search warrants served during preindictment phase of investigations, but District Court did not err in determining that sealing is necessary to protect compelling governmental interest, in view of government’s showing of substantial probability that its ongoing investigation would be severely compromised by release of documents, and in determining that less restrictive alternatives, such as line-by-line redaction of documents, were impracticable].)
This court need not reach the issue of whether the First Amendment or the common law affords a qualified right of access in these circumstances. If there be such a right, then the balancing performed above respecting the individuals’ names would be required. Whether or not required, the balance weighs in their favor, as herein determined.
CONCLUSION
Upon reading and filing the affidavit of Paul R. Grand, Esq., attorney for the law firm of Bryan, Cave, McPheeters & McRoberts, sworn to October 13 [sic] 1989; the memorandum of law in support of John Doe Partnership’s application for an order sealing the search warrant served upon John Doe Partnership dated October 12, 1989; the order to show cause dated October 12, 1989; letter brief to the court from Barbara L. Wartelle, Gannett assistant general counsel, dated October 19, 1989; letter brief to the court from Paul R. Grand, Esq., dated October 20, 1989; points and authorities in opposition to motion to seal search warrants dated October 20, 1989; and upon oral argument held on October 13 and 20, 1989; and due deliberation having been given, it is:
Ordered, that the application on the basis of which the *790 search warrant was issued shall be filed in the normal fashion, unsealed and accessible to the press and public except as to the names of individual lawyers at the law firm of Bryan, Cave, McPheeters & McRoberts, which names are to be deleted both in publicly accessible copies of the application and also in the stenographic records of the sentencing of Sherman Krisher on October 6, 1989, and of the oral argument herein on October 13, 1989; and it is further:
Ordered, that judgment be settled in accordance herewith, pending which the search warrant application shall remain sealed as shall the name of any lawyer of such firm mentioned in such stenographic records.

 In a cover letter to the court, the Law Firm’s attorney requested that his papers seeking sealing be themselves sealed. However, the papers were not submitted to the court on condition of their being sealed, and the court in fact provided for service of the Law Firm’s order to show cause not only on the Westchester District Attorney, as provided in the draft order submitted to the court, but also on the lawyer for the confessed thief and on the Gannett Newspapers, who had previously obtained the court’s leave to photograph the sentencing. Gannett’s counsel participated in oral argument on October 20,1989, concerning the sealing issue.