908 F.2d 967
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
RICHLAND COUNTY SCHOOL DISTRICT ONE, Plaintiff-Appellee,
v.
BARBER-COLMAN COMPANY, Defendant-Appellant.
 No. 89-1507.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 8, 1990.
Decided: June 29, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Karen L. Henderson, United States District Judge. (CA-88-396-3-16).
 Wilmot Brown Irvin, Glenn, Irvin, Murphy, Gray & Stepp, Columbia, S.C., argued, for appellant; on brief.
 Charles Elford Carpenter, Jr., Richardson, Plowden, Grier & Howser, Columbia, S.C., argued, for appellee; on brief. Robert F. McMahan, Jr., Glenn, Irvin, Murphy, Gray & Stepp, Columbia, S.C., on brief. Deborah L. Harrison, Franklin J. Smith, Jr., Richardson, Plowden, Grier & Howser, Columbia, S.C., on brief.
 D.S.C.
 REVERSED AND REMANDED.
 Before SPROUSE, CHAPMAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 The dispute underlying this appeal stems from problems with the energy management system at the Crayton Middle School in Richland County, South Carolina. The School District sued Barber-Colman Company, the subcontractor that installed the system, and won a jury verdict of $90,925. Barber-Colman appeals. We reverse and remand for a new trial.
 
 
 2
 * In the early 1980s, Richland County School District One embarked on a project to improve the temperature control systems in a number of district schools. It retained a general contractor who subcontracted with the Barber-Colman Company for installation of a centralized, automatic energy management system. The system was structured so a master schedule could be programmed into a computer at district headquarters and transmitted by telephone line to the schools. Control panels at the schools would receive the schedule and, through a system of synthesizers, transmitters, and responders, send operating directions to heat pumps serving different areas of the buildings. Barber-Colman installed this system in the Crayton Middle School for a contract price of $66,625.
 
 
 3
 The Crayton system appeared to be operating properly when its installation was finished in September 1982, but difficulties developed. Barber-Colman made numerous visits to the school and made modifications to reduce the amount of stray signals ("noise") on the system, including relocating transmitters and installing noise suppression devices. In addition to these problems, a number of responders required early replacement.
 
 
 4
 After the system warranty expired,[1] the School District filed this action against Barber-Colman in state court alleging breach of contract and of implied and express warranties. The School District sought damages for the cost of repairing the system and for excess energy costs incurred because the system did not function properly. Barber-Colman removed the action to district court on diversity grounds. The case was tried to a jury which returned a $90,925 verdict in favor of the School District. After its post-trial motions were denied, Barber-Colman noted this appeal.
 
 II
 
 5
 Barber-Colman asserts that the trial court erred in charging the jury regarding the measure of damages available to the School District. We agree. In its complaint, the School District stated common law causes of action and prayed for damages for excess energy costs and for the cost of repairing the energy management system in the Crayton School. It adhered to this theory of the case throughout discovery. At trial, however, the School District introduced evidence of component failure, and the court concluded that the action was controlled by article two of the Uniform Commercial Code as a transaction in "goods." S.C.Code Ann. Sec. 36-2-105(1). The court then instructed the jury to apply a U.C.C. measure of damages--"difference in value":
 
 
 6
 The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
 
 
 7
 S.C.Code Ann. Sec. 36-2-714(2). The only evidence in the record going to "difference in value" was the original subcontract price of $66,625 and the School District's assertion that the system was worthless. Barber-Colman asserts that, because it did not expect this jury instruction on damages, it was not prepared to present evidence as to the salvage value of system components.
 
 
 8
 Modern pretrial practice is designed to "make a trial less a game of blindman's bluff," United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958), but here Barber-Colman was left in the dark. The School District did not indicate that it was shifting to a U.C.C. case theory in discovery. It did not seek and the district court did not grant an amendment to the pleadings. Richland County School District One v. Barber-Colman, Co., CA-88-396-3-16, order at 2 (D.S.C. July 18, 1989). Barber-Colman did not consent to the alteration in the School District's theory of recovery. See Fed.R.Civ.P. 15(b).
 
 
 9
 Since the damages issue formally submitted to the jury, i.e., the "difference in value" measure of damages, "was neither raised by the complaint nor tried, it was reversible error for the district court to put the issue before the jury in its charge." Joiner Syss. v. AVM Corp., 517 F.2d 45, 49 (3d Cir.1975); see also Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 892-93 (4th Cir.1980). We therefore reverse and remand for a new trial.[2]
 
 REVERSED AND REMANDED
 
 
 [1]
 Barber-Colman had extended the warranty for an additional year because of the problems with the system
 
 
 [2]
 In light of our disposition of this issue, we need not address Barber-Colman's other arguments