70 F.3d 112
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
HARTZ AND COMPANY, INCORPORATED, Plaintiff-Appellant,
v.
PRODUCTION CONTROL INFORMATION (PCI) LIMITED; PCI Systems,
Incorporated, Defendants-Appellees.
HARTZ AND COMPANY, INCORPORATED, Plaintiff-Appellant,
v..
PRODUCTION CONTROL INFORMATION (PCI) LIMITED; PCI Systems,
Incorporated, Defendants-Appellees.
HARTZ AND COMPANY, INCORPORATED, Plaintiff-Appellee,
v.
PRODUCTION CONTROL INFORMATION (PCI) LIMITED; PCI Systems,
Incorporated, Defendants-Appellants.
HARTZ AND COMPANY, INCORPORATED, Plaintiff-Appellee,
v.
PCI SYSTEMS, INCORPORATED, Defendant-Appellant,
and
PRODUCTION CONTROL INFORMATION (PCI) LIMITED, Defendant.
 Nos. 93-2500, 94-1164, 94-1176, 94-1177.
 United States Court of Appeals, Fourth Circuit.
 Argued July 14, 1994.
Decided Nov. 15, 1995.
 
 ARGUED: Thomas D. Kohn, GOLDMAN, KOHN & DEMBERT, P.A., Baltimore, Maryland, for Appellant. Stephen Henry Kaufman, PIPER & MARBURY, Baltimore, Maryland, for Appellees. ON BRIEF: Brian A. Goldman, Michelle G. Berry, GOLDMAN, KOHN & DEMBERT, P.A., Baltimore, Maryland, for Appellant. Henry R. Lord, PIPER & MARBURY, Baltimore, Maryland, for Appellees.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Hartz & Company, Inc. (Hartz), a Maryland corporation, appeals from several discovery rulings of the district court, as well as orders dismissing its claims against Production Control Information Limited (PCI-England), an English corporation, and PCI Systems, Inc. (PCI-Georgia), a Georgia corporation, for breach of contract, breach of warranty, and negligent misrepresentation. PCI-England and PCI-Georgia appeal from an extension of time granted by the district court to Hartz to file a notice of appeal, and PCI-Georgia crossappeals from the dismissal by the district court of its compulsory counterclaim against Hartz for contractual indemnity. For the reasons set forth below, we affirm in part and dismiss in part.
 
 
 2
 Because the most significant part of this case was dismissed after pretrial discovery on the limited issue of whether the district court had personal jurisdiction over PCI-England, the facts are limited and essentially undisputed. Hartz, a men's-clothing manufacturer, was represented at a garment trade show called the Bobbin show in 1985. At the show, Hartz's representative encountered a representative of PCI-England, who demonstrated a computer system designed by PCIEngland for use in clothing-manufacturing operations. Hartz then contacted PCI-England and visited PCI-England's offices in England for further demonstration of the system. PCI-England representatives also visited Hartz's plant in Maryland. Hartz was then referred to PCI-Georgia,[1] and PCI-Georgia contracted with Hartz for the purchase of the system. Hartz alleges that the system did not perform as represented by PCI-England and PCI-Georgia.
 
 
 3
 On April 4, 1990, Hartz sued PCI-England and PCI-Georgia in the Maryland District Court for breach of contract, breach of warranty, and negligent misrepresentation. PCI England filed a motion to dismiss for lack of jurisdiction over the person, improper venue and insufficiency of service of process in September 1990. Hartz responded that PCI-England had sufficient contacts with the State of Maryland to satisfy due process and the Maryland long-arm statute, and that in any event PCI-England and PCI-Georgia were engaged in either an agency relationship or a joint venture, either of which would give the Maryland courts personal jurisdiction over the person of PCI-England.
 
 
 4
 On October 19, 1990, PCI-Georgia filed an answer and counterclaim asserting that Hartz was liable to PCI-Georgia for indemnity under the contract, as well as a motion to dismiss the negligent misrepresentation count of the complaint.
 
 
 5
 On January 22, 1991, the district court scheduled a hearing on the motion to dismiss and other pending motions for March 28, 1991. Hartz initiated no discovery in the interim. At the March 28, 1991 hearing, the district court granted the motion to strike the negligent misrepresentation count. PCI-England objected to further discovery on the issue of personal jurisdiction, arguing that Hartz had had six months to pursue discovery on the motion to dismiss and had failed to do so.
 
 
 6
 Following a colloquy with the attorneys at which Hartz promised a document request by the first week in April, the district court deferred ruling on PCI-England's motion to dismiss until after discovery was conducted on the issue.
 
 
 7
 Hartz did not submit discovery requests by the first week of April as promised. Instead, on May 6, 1991, Hartz served discovery on both PCI-England and PCI-Georgia including document requests, numerous interrogatories, and a request for admissions from PCI-Georgia. This discovery was admittedly not limited to the issue of jurisdiction. Defendants responded with a joint motion for protective order, alleging that Hartz's discovery requests were in violation of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (Hague), were filed late, and were overbroad in the light of the district court's narrowing of the issues for discovery to that of its personal jurisdiction over PCI-England. Hartz responded to the motion and PCI-England replied.
 
 
 8
 On July 26, 1991, the district court entered a memorandum and order granting the motions for protective order and excusing PCIEngland and PCI-Georgia from responding to Hartz's discovery requests.[2] The district court, however, gave Hartz until August 7, 1991, to "serve on each Defendant a Request for Production of Documents limited to 'the correspondence, agreements between PCI England and PCI Georgia, [and] their allegations under affidavit ... that these are separate corporations [and] that they are separately funded.' " PCI-England and PCI-Georgia were then given until August 22, 1991 to respond, after which the district court ordered that:
 
 
 9
 5. By September 15, 1991 Plaintiff shall respond to any objection and shall file any motion seeking additional discovery relating to jurisdictional issues.
 
 
 10
 a. Said motion must be filed even if objections to discovery remain pending although, of course, the Plaintiff will be given leave to supplement the motion following a ruling on the objection which results in additional document production.
 
 
 11
 b. Said motion must specify the precise additional discovery sought.
 
 
 12
 (emphasis added).
 
 
 13
 Hartz served a document request on PCI-England on August 5, 1991 and PCI-England timely responded, objecting to every request and producing no documents. Hartz replied on September 5, 1991, explaining that each of its requests was in conformity with the discovery order of July 26, 1991. Hartz filed no additional discovery motions by September 15, 1991 or at any time before October 6, 1992.
 
 
 14
 After 13 months of inactivity, on October 6, 1992, the district court issued its memorandum and order stating that Hartz had not proved personal jurisdiction under either the theory of direct contacts with the State of Maryland or that of an alter ego or agency relationship. The district court concluded that it could not determine from the record whether a joint-venture relationship existed between PCI-England and PCI-Georgia, and granted Hartz permission to make discovery on that issue alone, and denied PCI-England's motion to dismiss without prejudice to renewal if Hartz was unable to show a joint venture. The district court also rejected PCI-England's claims of improper venue and insufficient service of process. Finally, the district court ordered Hartz to arrange an in-chambers conference by November 2, 1992 if the parties could not agree on a permissible discovery plan by that date.
 
 
 15
 Absent agreement by the parties on a plan of discovery, an inchambers conference was held on November 16, 1992. Hartz submitted for approval six document requests limited to the issue of the joint-venture theory of personal jurisdiction. The district court approved, and PCI-England's counsel did not object to the requests. On November 17, 1992, the district court entered an order directing PCI-England and PCI-Georgia to "respond to Plaintiff's request ... by December 1, 1992. "
 
 
 16
 PCI-England and PCI-Georgia failed timely to respond, and with the consent of the parties the district court extended the time for their responses to February 2, 1993. On February 2, 1993, they responded by objecting to all of Hartz's discovery requests on the grounds of Hague violations.
 
 
 17
 On April 7, 1993, in response to PCI-England's objections, and after threatening to move the district court to compel the production of documents, Hartz made a motion for an order granting personal jurisdiction over PCI-England due to defendant's failure to comply with discovery orders, apparently because of its view that the district court's order of November 17, 1992 constituted an order compelling production of documents. PCI-England responded that it had objected properly to the requests and thus had not failed to respond, and that in any event Hartz had failed to move the district court to compel discovery as required by the Federal and Local Court Rules.
 
 
 18
 On April 13, 1993, the district court denied Hartz's motion. In the April 13 Order, the district court directed Hartz to serve a request for production of documents on PCI-England by May 2, again limited to the joint-venture issue, and to provide a status report on the discovery by July 1, 1993.
 
 
 19
 On September 3, 1993, Hartz submitted a letter to the district court stating that it was unable to prove the joint-venture theory. The letter stated further that:
 
 
 20
 .... Plaintiff believes that the documents which were finally produced by PCI-England to Plaintiff in June, 1993, ... support Plaintiff's theory that PCI-Georgia was an alter ego of PCI-England and that this Court has jurisdiction over PCI-England pursuant to the Maryland Long Arm Statute. Plaintiff believes that this Court erroneously denied Plaintiff its opportunity to rebut Defendant's Motion to Dismiss before discovery was complete and made findings of fact for which it had no reasonable basis.
 
 
 21
 Please enter a final Order in this matter so that this matter may proceed at the next level.
 
 
 22
 On September 20, the district court entered an Order granting PCIEngland's motion to dismiss, although it stated that, "Mr. Kohn indicates a desire to have 'this matter proceed at the next level.' "
 
 
 23
 On October 19, 1993, Hartz appealed, despite the fact that the district court's September 20 Order, styled an "Order Dismissing Claims Against Production Control Information (PCI) Limited," clearly did not dismiss either Hartz's claims against PCI-Georgia or PCIGeorgia's counterclaim. Hartz then notified the district court that it had not entered a final Order in the case and that PCI-Georgia was "defunct and that Plaintiff does not wish to pursue any claims against it," and on October 25, 1993, the district court issued a final order dismissing all claims with prejudice.[3]
 
 
 24
 Hartz did not timely appeal the final order, but on notification from this court moved for an extension of time to file a notice of appeal until January 15, 1994, and the district court granted that motion on December 20, 1993. Hartz then filed its notice of appeal from the October 25 final order on January 11, 1994. On January 21, 1994, defendants appealed the December 20 order granting Hartz an extension of time to file an appeal, and PCI-Georgia further appealed the dismissal of its counterclaim.
 
 
 25
 On March 14, 1994, defendants moved this court to dismiss Hartz's appeals on the ground that the first was interlocutory and the second was time-barred. On April 7, a panel of this court denied that motion.
 
 
 26
 Hartz claims on appeal that the district court abused its discretion in: (1) granting the motion for protective order to PCI-England and PCI-Georgia on July 26, 1991; (2) rejecting by the order of October 6, 1992 Hartz's minimum-contacts and agency theories of personal jurisdiction without sufficient discovery on the issue, and limiting further discovery to the issue of whether a joint venture existed; and (3) denying Hartz's motion for an order granting personal jurisdiction over PCI-England on April 13, 1993.
 
 
 27
 In response, PCI-England and PCI-Georgia argue that: (1) we have no jurisdiction to hear this appeal because Hartz cannot appeal from a case dismissed on its own motion; (2) we have no jurisdiction to hear this appeal because both of Hartz's notices of appeal were untimely, and the district court abused its discretion in finding that Hartz committed excusable neglect in failing to notice a timely appeal from the October 25, 1993 Final Order; and (3) in any event the district court did not abuse its discretion in issuing the challenged orders. PCI-Georgia cross-appeals from the unsolicited dismissal with prejudice of its compulsory counterclaim for indemnity under the contract due to concerns that we may reinstate Hartz's claims. We turn first to the jurisdictional challenges.
 
 I. Jurisdiction
 A. Hartz's Appeal After Voluntary Dismissal
 
 28
 Ordinarily, a plaintiff may not appeal from a voluntary dismissal of its case. See Distaff, Inc. v. Springfield Contracting Corp., 984 F.2d 108, 110 (4th Cir.1993). However, we are of opinion that Hartz's appeal in this case falls squarely under the exception carved out by the Supreme Court in United States v. Proctor & Gamble Co., 356 U.S. 677, 680-81 (1958) (P & G ), cited in Distaff, 984 F.2d at 110. In P & G, the Supreme Court stated that:
 
 
 29
 [T]he familiar rule that a plaintiff who has voluntarily dismissed his complaint may not sue out a writ of error .... has no application here. The [plaintiff] at all times opposed [certain Orders of the district court]. It might of course have tested their validity in other ways .... [y]et it is understandable why a more conventional way of getting review of the adverse ruling might be sought and any unseemly conflict with the District Court avoided. When [plaintiff] proposed dismissal ..., it had lost on the merits and was only seeking expeditious review.
 
 
 30
 356 U.S. at 680-81.
 
 
 31
 In Distaff, we followed P & G, and we follow Distaff and P & G here. Defendants' position is not well taken, and we are of opinion that Hartz may appeal.
 
 B. Timeliness of Appeal
 
 32
 PCI-England and PCI-Georgia ask us to reconsider our April 7, 1994 order denying their motion to dismiss Hartz's October 19, 1993 and January 11, 1994 appeals as untimely. Even if we may, we decline to reconsider that order, the end and effect of which is that Hartz may prosecute its appeal.
 
 II. The Discovery Orders
 
 33
 These appeals do not concern the district court's factual findings,[4]namely its findings on October 6, 1992 that Hartz did not establish either an alter-ego/agency relationship between PCI-England and PCI-Georgia or sufficient contacts between PCI-England and the State of Maryland to establish personal jurisdiction under either due process or the Maryland long-arm statute, which findings are supported by the record. These appeals do challenge the district court's discretionary actions with reference to discovery. We will address the contested orders in order.
 
 A. The Protective Order Dated July 26, 1991
 
 34
 District courts have broad discretion in deciding whether to grant or deny protective orders, and the grant or denial of such orders will be reversed only for abuse of that discretion. See M & M Medical Supplies & Serv., Inc. v. Pleasant Valley Hospital, Inc., 981 F.2d 160, 163 (4th Cir.1993) (en banc). "Abuse may be demonstrated by a clear showing that denial of discovery has caused substantial prejudice." M & M Medical, 981 F.2d at 163.
 
 
 35
 We are of opinion that the district court did not abuse its discretion on July 26, 1991 when it granted the defendants' motion for a protective order and excused the defendants from responding to Hartz's discovery requests. See supra note 2 and accompanying text for more of the factual background. We note particularly Hartz's admitted requests which exceeded the scope of permissible discovery authorized by the district court at the March 28, 1991 hearing, and the fact that Hartz's discovery requests were a month later than promised.
 
 
 36
 But, that aside, and of even more consequence, it is evident that the protective order in no way injured or prejudiced Hartz's discovery activities. The district court granted Hartz additional time equal to the length of time to which Hartz had limited itself in the March 28 hearing for serving discovery requests, and allowed Hartz to use the same medium of discovery which Hartz had itself suggested in the March 28 hearing, document-production requests. The protective order effectively imposed no sanction on Hartz, but only placed it in the position it had been in four months earlier when it told the district court that it would serve document-production requests regarding personal jurisdiction on PCI-England and PCI-Georgia within two weeks.
 
 
 37
 We are of opinion that the district court's protective order was generous in granting Hartz permission to conduct further discovery. Thus we are further of opinion that the protective order did not constitute an abuse of the district court's discretion, and its order is affirmed.
 
 B. The October 6, 1992 Order
 
 38
 On October 6, 1992, the district court rejected two of Hartz's three theories of personal jurisdiction and granted Hartz additional time to conduct discovery on the remaining theory, that of a joint-venture relationship between PCI-England and PCI-Georgia. We are satisfied that the district court was within its discretion to do so.
 
 
 39
 The July 26, 1991 protective order provided that Hartz was to make any motions for additional discovery by September 15, 1991. Hartz failed to make any such motion. In particular, Hartz did not make a motion to compel discovery following PCI's August 1991 responses, which objected to each of Hartz's requests and turned over no documents. In fact, there was no action at all taken in the interim between August 1991, and the October 6, 1992 order. We believe that after 24 months of discovery in opposition to the pending motion to dismiss, it was not an abuse of the district court's discretion to conclude that Hartz had not created a record supporting two of the theories of personal jurisdiction, for it had not moved the district court to compel discovery,[5] and had not requested additional discovery. We are therefore of opinion that it was within the district court's discretion to dispose of the pending motion.
 
 
 40
 Hartz's position that the district court should have decided the dispute regarding Hartz's second round of discovery without some initiative by Hartz is without merit. Discovery disputes ordinarily are not decided by the district court unless and until they are brought before it in the form of a motion to compel, a motion for protective order, or a motion for sanctions. We do not agree with Hartz's reasoning that the district court had some obligation to decide a discovery dispute that was not brought before it, particularly where it was in Hartz's interest to pursue the issue.
 
 
 41
 C. The Motion for Order Granting Personal Jurisdiction Over PCI
 
 
 42
 We briefly discuss Hartz's final assignment of error, the district court's April 13, 1993 denial of its motion for order granting personal jurisdiction over PCI-England. As we have stated, the appropriate procedure to follow when a party is dissatisfied with a response to discovery requests is a motion to compel discovery. See Buffington v. Baltimore County, 913 F.2d 113, 133 (4th Cir.1990) ("Rule 37(b) sanctions apply only to violations of a court order to permit or provide discovery, or one in regard to a discovery conference."). Failing this, we are of opinion that Hartz had no basis for the requested sanction, and we accordingly affirm the district court's denial of Hartz's motion.
 
 III. Conclusion
 
 43
 For the reasons we have discussed above, we affirm the judgment of the district court in each of the appeals in these cases except the appeal of its dismissal with prejudice of the counterclaim filed by PCI-Georgia. We construe the brief of the defendants, p. 38, see also plaintiffs' reply brief, p. 5, as taking the position that PCI-Georgia does not wish to pursue its appeal of such dismissal of its counterclaim unless the claims of Hartz against PCI-Georgia are reinstated by this court. We have affirmed the judgment of the district court in favor of PCI-Georgia with respect to the claims of Hartz against it, so Hartz's claims against PCI-Georgia are not reinstated. Therefore, the appeal of the dismissal of the counterclaim of PCI-Georgia is moot, and that appeal is dismissed for mootness.
 
 
 44
 No. 93-2500 is AFFIRMED.
 
 
 45
 No. 94-1164 is AFFIRMED.
 
 
 46
 No. 94-1166 is AFFIRMED.
 
 No. 94-1177 is DISMISSED.[6]
 
 
 [1]
 Hartz alleges that PCI represented to Hartz that PCI-Georgia was "its subsidiary and American joint venture partner." PCI-Georgia was 50% owned by PCI-England
 
 
 [2]
 The district court stated in its order of July 26, 1991 that:
 Plaintiff's counsel has chosen to disregard the representations made to the Court at the hearing of March 28, 1991. Not only was his promise of a rapid filing unfulfilled, but the commitment as to the limited scope of discovery needed to address the pending motion was totally disregarded. Plaintiff's counsel simply decided to commence general discovery against the English company without limitation as to type of discovery or subject matter.
 Both the English company and the Georgia company have moved for a Protective Order.... One ground asserted is that the subject discovery was late. As to the lateness allegation, Plaintiff asserts that due to the absence of a specified discovery deadline in the Court's written order dated April 2, 1991 "no argument can be made that Plaintiff's Discovery Requests were not timely." The Court disagrees....
 Because of the severe effect of a total prohibition of discovery and because the record is not absolutely clear that Plaintiff had a specific deadline by which to file its jurisdictional discovery, the Court is not holding that the discovery was filed impermissibly late. However, the Court will not relieve the Plaintiff of the commitments that counsel undertook on the record at the hearing of March 28. That is, that the discovery would be limited to a request for production of documents related to specified subjects.
 .... [T]he pending discovery exceeds the limited discovery which Plaintiff requested and was permitted in order to supplement its response to the pending motion to dismiss. Hence, the defendants shall not be required to comply with any of the pending discovery requests.
 The Court, with possibly excessive consideration for Plaintiff will allow additional time, equivalent to that which was requested in the March 28 hearing, for Plaintiff to engage in limited discovery to the extent sought at the said hearing.
 
 
 [3]
 The district court entered a judgment order on October 21, 1993, dismissing all claims with prejudice, but because of typographical errors in that order, the district court issued an order rescinding judgment order and a revised judgment order on October 25, 1993. This opinion will refer to the order of October 25, 1993 as the final order
 
 
 [4]
 For example, the brief states, on p. 20:
 This unilateral decision of the District Court was premature, and, therefore, clearly erroneous....
 
 
 [5]
 Under Md. Local Rule 104.8,
 [t]he following procedure shall be followed in litigating motions to compel answers to ... requests for production ... as to which a response has been served....
 a. Service of Motion Papers. If a party who has propounded ... requests for production is dissatisfied with the response to them, that party shall serve a motion to compel within twenty days of the party's receipt of the response. ... The parties shall file with the Court notices of the service of the motion....
 (emphasis added).
 
 
 [6]
 The motion of PCI-England and PCI-Georgia, filed November 8, 1994, for just damages and double costs under Fed. R.App. P. 38 and 28 U.S.C. Sec. 1912 is denied